**UNITED STATES of America, Appellant,**

v.

**Brian E. BENTON.**

No. 92–7674.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) June 7, 1993.

Decided June 23, 1993.

James J. West, U.S. Atty., Theodore B. Smith, III, Asst. U.S. Atty., Office of U.S. Atty., Harrisburg, PA, for appellant.

James V. Wade, Federal Public Defender, Daniel I. Siegel, Asst. Federal Public Defender, Office of Federal Public Defender, Harrisburg, PA, for appellee.

Before: GREENBERG, NYGAARD, and LEWIS, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

The United States appeals from an order of December 2, 1992, suppressing a statement of the appellee Brian E. Benton from introduction into evidence by the prosecution in his forthcoming trial for possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g).

The facts of the case as developed at an evidentiary hearing on the motion to suppress are not in dispute. On September 19, 1991, Officer Norman Patterson of the Harrisburg, Pennsylvania, police department received a radio communication that Benton had robbed someone at a tavern in Harrisburg. Patterson, who knew Benton, went to the scene as did other police officers. One of the other officers, Joseph Cesari, who arrived separately, saw Benton look at him and then run away onto Sixth Street and then into Peffer Street where Cesari lost him from view.

At about that time Patterson, who had approached from a different direction, saw Benton on Peffer Street. Patterson observed Benton bend down along a wooden door which opened into Peffer Street from the storage area of another tavern. Benton then stood up and walked back in the direction from which he had come. At that point Cesari came up, drew his gun, and ordered Benton to stand up against the wall. Patterson then searched Benton for weapons with negative results. During that search, Benton asked Patterson what was going on. Patterson told Benton that the police had received a call that he had robbed someone with a gun and that they were looking for the gun. Patterson then handcuffed Benton and took him to the patrol car, locking him in the back seat.

Patterson then started searching for the gun. This was not a difficult undertaking, as he found it simply by looking under the wooden door where Benton had bent down. Another officer then opened the door and Patterson picked up the gun, which was a loaded semi-automatic.

Patterson then went back to the patrol car, at which time Benton again asked what was going on. Patterson told Benton that he was going to be charged and that he had seen Benton bend over, a reference to Benton's conduct near the door where Patterson found the gun. At that point Benton made the statement which the district court suppressed, that no one had seen him throw away the gun. The government concedes that the officers had not given Benton *Miranda* warnings before he made this statement and it further agrees that he was in custody when he made the remark.

The district court reached its conclusion on the grounds that under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), as applied in *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1982), a suspect in custody is protected from the " 'functional equivalent' of interrogation, that is [from] 'any words or actions on the part of the police (other than those normally attendant upon arrest and custody) that the police should know are *reasonably likely to elicit an incriminating response* from the suspect.' " (Quoting *Innis, Id.* at 301, 100 S.Ct. at 1689–90; emphasis by the district court). The district court explained that "[a]nalysis of whether particular words or

conduct are likely to elicit incriminating statements 'focuses primarily upon the perceptions of the suspect, rather than on the intent of the police.'" (quoting *Innis, Id.* at 301, 100 S.Ct. at 1690). The district court indicated that it was "unnecessary to the arrest for Officer Patterson to tell [Benton] that he saw him bend over at the door." Furthermore, in the court's view, Patterson's statement was not an answer to Benton's question of what was going on. Rather, it was a declaration to Benton that the police had evidence "linking him to the gun" which was likely to elicit a response from Benton protesting innocence or admitting guilt.

Under *United States v. Calisto,* 838 F.2d 711, 717–18 (3d Cir.1988), an appeal on the issue of whether there was a custodial police interrogation can require us to exercise two standards of review, depending upon the focus of dispute. While we accept a district court's finding of primary historic facts unless they are clearly erroneous, we exercise plenary review with respect "as to whether the police conduct found to have occurred constitutes custodial interrogation under all the circumstances of the case." Here, as the historic facts are not in question, we are exercising plenary review.[1]

We recognize, of course, that under *Miranda* the police by using psychological ploys and subtle compulsion effectively can conduct custodial interrogations. *See Arizona v. Mauro,* 481 U.S. 520, 527–30, 107 S.Ct. 1931, 1935–36, 95 L.Ed.2d 458 (1987); *Nelson v. Fulcomer,* 911 F.2d 928, 932–36 (3d Cir. 1990). Thus, it is important to consider this case with reference to the circumstances at the time Benton made his statement. Obviously, this case did not involve a contrived situation in which a suspect, arrested after a significant time interval following an offense, was brought to a police station and told of information which the police had accumulated linking him to the crime. Rather, Benton made his statement following his on-the-spot arrest by officers directed to the scene of the crime.

Accordingly, it would be unreasonable to conclude that the police intentionally created circumstances likely to elicit a statement from Benton. Patterson did nothing more than tell Benton why he was being arrested. While we do not doubt that he lawfully could have told Benton the charge against him and have said nothing more, we do not think that Patterson's act of describing an observation he made prior to the arrest constituted the functional equivalent of a custodial interrogation. Rather, this was a case in which Benton's remarks were unforeseeable. *United States v. Calisto,* 838 F.2d at 716.

Finally, we point out that this is not a situation in which a suspect would have felt compelled to respond to the arresting officer's statement. This was not, for example, a case in which the police suggested that other members of Benton's family were implicated in the crime, thus encouraging him to speak to accept sole responsibility. Nor did the police tell Benton that they had inculpatory information from a witness which Benton might want to deny. Furthermore, the police did not attempt to induce Benton to incriminate himself by confronting him with a partner in crime who had confessed. *See Nelson v. Fulcomer,* 911 F.2d at 934. In the circumstances it is clear that Patterson's remarks gave Benton no incentive to say that no one had seen him throw away the gun. Thus, even if we disregarded the fact that Benton had asked what was going on, we would conclude that the police did not conduct a custodial interrogation or its functional equivalent. Rather, Benton's statement was simply gratuitous.

The order of December 2, 1992, will be reversed.

---

1. We have jurisdiction under 18 U.S.C. § 3731.