

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-15-1998

# United States v. Tyler

Precedential or Non-Precedential:

Docket 96-7776

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"United States v. Tyler" (1998). *1998 Decisions*. Paper 277.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/277

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 15, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-7776

UNITED STATES OF AMERICA

v.

WILLIE TYLER
a/k/a "Little Man"

WILLIE LEE TYLER,
        Appellant

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE MIDDLE
DISTRICT OF PENNSYLVANIA
D.C. No. 96-cr-00106

Argued: August 12, 1997

Before: Alito, Lewis and McKee, Circuit Judges.

Reargued: July 8, 1998

Before: Cowen, Alito and McKee, Circuit Judges

(Filed December 15, 1998)

        Lori J. Ulrich, Esq.
        Office of Federal Public Defender
        Suite 306
        100 Chestnut Street
        Harrisburg, PA 17101

Daniel I. Siegel, Esq. (Argued)
Office of Federal Public Defender
100 Chestnut Street
Harrisburg, PA 17101

   Attorneys for Appellant

Gordon A.D. Zubrod (Argued)
Office of the United States Attorney
Federal Building
228 Walnut Street
P.O. Box 11754
Harrisburg, PA 17108

   Attorney for Appellee

OPINION OF THE COURT

McKee, Circuit Judge

Willie Lee Tyler ("Tyler") appeals his convictions on charges arising out of the killing of Doreen Proctor, a government witness who was scheduled to testify against Tyler's brother, David, the day after Proctor's murder. Tyler, David, Roberta Ronique Bell and others were subsequently arrested and charged in state court. Tyler and Bell were acquitted of murder in the state prosecution (though they were convicted of conspiracy to intimidate a witness) and were thereafter separately prosecuted for witness tampering and related offenses in federal court. Tyler was convicted of conspiracy, witness tampering, and a related firearms offense in the federal prosecution, and this appeal followed. He raises several assertions of error, however, we only discuss his assertion that the district court erred in denying his motion to suppress certain custodial statements. His remaining assertions are either meritless or waived with the exception of his challenge to the court's jurisdiction under 18 U.S.C. S 1512. We will mention that assertion only briefly as we have already disposed of that claim in the appeal taken by one of Tyler's companions. For the reasons that follow, we will reverse the district court's order denying suppression of the statement Tyler gave after

2

being given his Miranda warnings, and remand for proceedings consistent with this opinion.[1]

I.

In April 1992, David Tyler was to be tried in the Court of Common Pleas in Cumberland County, Pennsylvania on criminal charges related to drug trafficking. Doreen Proctor, a government informant for the Tri-County Drug Task Force in Central Pennsylvania, was scheduled to testify against him. Ms. Proctor had previously testified against several individuals, including David Tyler, during a preliminary hearing in state court in Carlisle, Pennsylvania. However, the day before David Tyler's trial was to begin, David Tyler and his cohorts severely beat, stabbed, and shot Proctor. Her mangled body was discovered the next day.

On July 9, 1992, police arrested Willie Tyler for the murder of Proctor and took him to the Carlisle Borough Police Department. After an officer gave Tyler his Miranda warnings,[2] Tyler stated that he did not wish to make a statement, and the officers refrained from further interrogation.

Tyler was then taken to the State Police Barracks in Gettysburg, Pennsylvania for re-arraignment.[3] Detective Ronald Egolf of the Carlisle Police Department was assigned to guard and process him. Upon arriving at the barracks, Tyler was taken to a small room and, at about 10:00 pm, he and Detective Egolf engaged in a discussion that included hunting, Tyler's education, and Tyler's mother's

_____

1. We have jurisdiction pursuant to 28 U.S.C.S 1291.

2. See Miranda v. Arizona, 384 U.S. 436 (1966).

3. There is some dispute about exactly what occurred in transit. Tyler alleges that police drove through a parking lot where Tyler and his co-conspirators had driven the night of Proctor's murder. However, the government disputes this testimony, and the district court did not attempt to resolve the conflict. In any event, given our holding today, the significance of this conflict is greatly reduced. We note, however, as suggested by our discussion below, that the district court must resolve this conflict on remand to the extent that it may be relevant to the circumstances leading up to the defendant's statement of July 20.

3

health. Although it is clear that the police and Tyler were engaged in a discussion up until 10:55 pm, it is not clear how many police were involved, nor exactly what was said. It is clear, however, that at approximately 10:55 pm, Tyler began to cry, and the police again warned him of his Miranda rights. This time Tyler gave an inculpatory statement that was introduced against him at his trial.

Eleven days later, on July 20, police obtained another statement from Tyler while he was in custody in Adams County Jail. The government maintains that the officers repeated Miranda warnings, that Tyler verbally acknowledged that he understood them, and that he proceeded to orally waive those rights and give another inculpatory statement. That statement, which was also introduced against him at trial, differs from the July 9 statement in that in the later statement Tyler states that David wanted only to "scare" Ms. Proctor. Def. Exh. "J". In his earlier statement, Tyler had said that David wanted to kill her.

Tyler filed a motion to suppress all statements made on July 9, and the statement he made on July 20. The district court granted Tyler's suppression motion as to any statement Tyler may have given on July 9 before receiving Miranda warnings ("the 10:00 pm statement"),4 but denied it both as to the statement he gave after he was warned ("the 10:55 pm statement"), and the statement he later gave on July 20 in the Adams County jail. Tyler now argues that the district court should have suppressed both the 10:55 pm statement and the July 20 statement. Although we agree that the district court erred in denying the suppression motion as to the 10:55 statement, we cannot, on the basis of this record, make a determination as to the July 20 statement. Accordingly, we will remand to allow the district court to make an appropriate inquiry into the

_____

4. The parties and the district court refer to the dates of the prior statement(s) alternatively as July 9, 1992, July 10 and July 9-10 because of the lateness of the hour. For the sake of consistency, and clarity, we will assume that the date of any statement given during the custodial interrogation that began at 10:00 pm was July 9, 1992, even though the statement may have been given after midnight.

4

admissibility of that statement. If the court concludes that the July 20 statement was properly admitted, it must then determine whether or not the error of admitting the July 9 statement was harmless.

II.

Before addressing the substance of Tyler's challenge to the district court's rulings on the suppression motion, we first note that Tyler also argues that there was insufficient evidence to sustain a conviction under 18 U.S.C. S 1512(a)(1)(A) and (C) (tampering with a federal witness, or interfering with a federal investigation). We need not discuss that contention, however, because we recently rejected the identical contention of codefendant, Roberta Ronique Bell, in her appeal from her conviction based upon her involvement in the murder of Ms. Proctor. See United States v. Bell, 113 F.3d 1345, 1348-51 (3d Cir. 1997). We reject Tyler's argument that the evidence did not establish federal jurisdiction under that statute for the same reasons that we rejected the identical arguments of Ms. Bell.

III.

A. The 10:55 pm Statement

Tyler maintains that the district court erred when it admitted the 10:55 pm statement that was taken on July 9, after he had exercised his right to remain silent. We exercise plenary review as to the admissibility of each of the challenged statements. United States v. Benton, 996 F.2d 642, 644 (3d Cir. 1993) (citing United States v. Calisto, 838 F.2d 711, 717-18 (3d Cir. 1988)).

There is no dispute that Tyler was in custody when he gave both the 10:55 pm statement and the July 20 statement.

In Miranda v. Arizona, the Supreme Court held that

> [W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the

5

privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, [certain warnings] are required . . . . But unless and until such warnings and waiver are demonstrated by the prosecution . . . no evidence obtained as a result of interrogation can be used against him.

384 U.S. at 478-79 (emphasis added). The Supreme Court elaborated upon this in Michigan v. Mosley, 423 U.S. 96 (1975). There, the Court succinctly stated: "We .. . conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda on whether his right to cut off questioning was scrupulously honored." 384 U.S. at 104 (emphasis in the original text).

When Tyler was taken to the police barracks after asserting his right to remain silent, he was placed in a small room, the walls of which contained a timeline of the murder investigation and crime scene photographs, including two photographs of the body of Doreen Proctor (one of which was in color). He remained there for hours. In his report, Trooper Graham stated that he, Detective Ronald Egolf and Troopers Donnelly and Fenstermacher began "talking to" Tyler at about 10:00 pm, even though Tyler had previously told them that he did not want to make a statement. Graham also stated in his report:

> While talking to Tyler he became very emotional and began to cry. Mr. Tyler stated he did not know they were going to kill Doreen Proctor and that he was there when it happened but did not see if Roberta Ronique Bell or Jerome Kenneth King did the shooting. He did however relate that those two subjects were the only people back there when it happened and that his brother David James Tyler had remained in the first vehicle with him. David James Tyler was [leaning] out of the car, crying and yelling, "We got to kill her now," "We got to kill her now."

6

> At this time Mr. Tyler was stopped and again advised
> [of] his Miranda warnings by Trpr. Fenstermacher and
> Mr. Tyler signed the Rights Waiver form which is
> attached to this report . . . .

D.Ct. Op. at 7. According to Graham, it was at that
moment that Tyler revealed all that happened the night of
the murder and the identity of those involved.

Detective Egolf's testimony at the suppression hearing
sharply conflicted with Trooper Graham's account of the
evening. Egolf claimed that he and Tyler were the only two
people present in the room when Tyler started to cry, and
that he told Tyler to "tell the truth" when he began crying.
App. at 287. Egolf also claimed that Tyler then began to
speak and, at 10:55 pm, he (Egolf) read Tyler his rights.

The conflicting nature of the police testimony in this case
caused the district court to comment: "We are troubled by
the glaring inconsistencies between Trooper Graham's
report and the testimony elicited at the suppression hearing
concerning what occurred prior to 10:55 pm on July 9,
1992." D.Ct. Op. at 7. The court also noted that "[a]t this
point,[5] the facts become unclear, particularly with respect
to Trooper Graham." D. Ct. Op. at 6. However, the district
court failed to make any findings of fact as to what actually
happened. We note, however, that Egolf and Graham's
versions of what occurred are both inconsistent with their
obligation to scrupulously honor Tyler's assertion of his
right to remain silent. Nevertheless, the district court's
failure to make findings of fact has made our task of
reviewing this record and ruling upon Tyler's arguments
significantly more difficult. It is clear that the district court
was troubled by the testimony the police gave in this case,
and the court suggests that the testimony is not credible.
For example, the court responded to the government's
argument that Tyler never asserted his right to remain
silent as follows:

> [T]hat argument, and the testimony of the
> Government's witnesses at the [suppression] hearing
> are undermined by the prior testimony of Trooper Craig

---

5. Here, the court is referring to the moment when Tyler began to cry.

7

R. Fenstermacher, who testified that Defendant "was asked if he wanted to give us any statements or information and he declined, so no further questions were posed to him."

D. Ct. Op. at 6. Rather than make findings of fact and conduct an analysis based upon those findings, the district court allowed any statement into evidence that was obtained after Tyler was advised of his Miranda rights. The court stated:

To the extent that the Defendant did make any statements while being interviewed between 10:00 and 10:55, those statements will be suppressed.6 However, any statements made after Defendant knowingly signed a waiver of his rights are admissible. Defendant's"fruit of the poisonous tree" argument must be rejected. Even assuming the officers improperly elicited statements from the Defendant prior to reading him his rights, the statements that Defendant made after 10:55 p.m. were the result of Defendant's knowing and voluntary waiver of his rights and were not tainted by any prior illegal statements.

D. Ct. Op. at 8. The appropriate inquiry under Miranda and its progeny, however, is not simply whether Tyler knowingly waived his rights after receiving appropriate warnings. Rather, the inquiry is whether the police "scrupulously honored" Tyler's assertion of his right to remain silent. Here, it is clear that they did not.

In Mosley, the Supreme Court amplified its pronouncement that "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." Miranda, 384 U.S. at 473–74. The Court in Mosley explained that this language could be interpreted literally to mean several things: that a person who has invoked his or her right to silence can never be subjected to custodial

_____

6. It does not appear from the record that Tyler made a statement before 10:55 pm. The district court did not specificallyfind that he did, it merely ruled that any statement that Tyler may have made before that time was suppressed.

8

interrogation; that any statement that was taken following exercise of the privilege is "the product of compulsion and would therefore mandate its exclusion from evidence, even if volunteered . . . without any further interrogation whatever"; or that it may "require only the immediate cessation of questioning, and . . . permit a resumption of interrogation after a momentary respite." 423 U.S. at 102. However, the Court rejected each of these interpretations. In rejecting the latter interpretation, the Court reasoned that allowing interrogation "after only a momentary cessation would clearly frustrate the purposes of Miranda by allowing repeated rounds of questioning to undermine the will of the person being questioned." Id.

Accordingly, it is clear that police can not, as if by alchemy, negate Tyler's invocation of his right to remain silent by a mantra-like recitation of Miranda warnings. The warnings are not intended to be a mere ritual, the exercise of which guarantees the admissibility of any statement that is obtained in a custodial interrogation regardless of the circumstances. "The critical safeguard identified in [Miranda] is a person's right to cut off questioning." Mosley, 423 U.S. at 104 (internal quotation marks omitted). Thus, as earlier noted, the Court concluded in Mosley "that the admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda on whether his right to cut off questioning was scrupulously honored." Id. (internal quotation marks omitted). Therefore, the district court erred when it simply concluded that "any statements made after Defendant knowingly signed a waiver of his rights are admissible." D. Ct. Op. at 8. Here, the command to "tell the truth" after Tyler had invoked his Miranda rights is the antithesis of scrupulously honoring his right to remain silent. Detective Egolf (and possibly others), see supra at pp. 2 and 6, had been carrying on a conversation with Tyler for nearly an hour when he broke down and was instructed to "tell the truth." These circumstances would, in and of themselves, be inconsistent with scrupulously honoring Tyler's assertion of silence. However, to make matters worse (as noted above), the room in which the "conversation" occurred had pictures of the murder victim hung on the walls.

9

Thus, the district court clearly erred in allowing the prosecution to admit statements taken from defendant after 10:55 pm on July 9. The prosecution should not have been allowed to admit those statements in its case-in-chief.7

B. The July 20, 1992 Statement

This case raises an issue that we have not yet addressed in the context in which Tyler raises it. We have previously had to determine the legality of a custodial statement after police have illegally obtained a prior statement in the context of a technical violation of Miranda under the Fifth Amendment. See United States v. Johnson, 816 F.2d 918 (3d Cir. 1987). We have not, however, determined the proper analysis when the prior illegality that is alleged to taint a subsequent "Mirandized" statement is the failure of the police to scrupulously honor a defendant's right to cut off questioning. Tyler claims that the July 20 statement should have been suppressed because it was obtained in violation of his Sixth Amendment right to counsel and was "the product of the initial illegalities that occurred on July 9th and 10th." Appellant's Br. at 44 (citing Wong Sun v. United States, 371 U.S. 471 (1963)). The government counters that Tyler's right to counsel was not violated because Tyler initiated the questioning. We believe the analysis that has been used to resolve allegations that statements were tainted by a prior violation of the Fourth and/or Fifth Amendment should also guide, though not control, our inquiry into the failure to scrupulously honor Tyler's right to remain silent, and the purported denial of his right to counsel.8

_____

7. Since we hold that the district court erred in admitting the 10:55 statement, we need not address Tyler's argument that the tactics used by police amounted to a ploy to overcome his will that was the functional equivalent of interrogation in violation of the rule enunciated in Rhode Island v. Innis, 446 U.S. 291 (1980).

8. In his concurring opinion, Judge Alito states that "Tyler's brief did not
seek suppression of the July 9 statement on constitutional grounds." See Dissent at 24. However, Tyler states that the state troopers failed to "scrupulously honor" his right to remain silent under Michigan v. Mosley. See Appellant's Br. at 40. He also argues that police engaged in a "continuing barrage of psychological ploys" to elicit statements after 10:55 p.m. on July 9, Appellant's Br. at 39. Therefore, he asserts a constitutional violation under Mosley.

10

When determining whether a suspect's Sixth Amendment right to counsel has been violated, our standard of review is plenary. Flamer v. Delaware, 68 F.3d 710, 720 (3d Cir. 1995). The Sixth Amendment right to counsel attaches "at or after the time that judicial proceedings have been initiated against [an individual] whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Brewer v. Williams, 430 U.S. 387, 398 (1977).

Here, Troopers Fenstermacher and Graham visited Tyler in his cell at Adams County Jail on July 20, 1992 and obtained an inculpatory statement from him. Tyler had already been arraigned and his right to counsel had attached.[9]

Trooper Fenstermacher testified that Tyler initiated the meeting. App. at 298, 321-22. He stated that a guard, or someone in a similar capacity, told him and Graham that Tyler desired to make a statement.[10] According to Fenstermacher, Graham re-Mirandized Tyler, but did not ask Tyler to sign a waiver of his Miranda rights. Graham testified that Tyler was aware of his rights and chose not to invoke them. The district court agreed.

We will analyze the legality of the July 20 statement both under the theory that the statement was the illegal fruit of the prior failure to honor Tyler's request that questioning cease and in terms of the purported waiver of Tyler's right to counsel. These two avenues of attack are similar, but not identical. They do, however, converge into a single inquiry -- the validity of the purported waiver on July 20.

1. Waiver

In denying Tyler's challenge to statements taken on July 20, the district court observed: "[T]here is nothing in the record to support an argument that Defendant's waiver was

_____

9. Counsel, however, was not appointed for Tyler until July 21, 1993. App. at 392.

10. The district court made no finding as to the credibility of that assertion although, as mentioned above, the court was skeptical of other police testimony.

11

not knowingly made." D. Ct. Op. at 9. That statement suggests that the district court required Tyler to prove that the July 20 statement was not made pursuant to a valid Miranda waiver, rather than requiring the government to establish a valid waiver. The government, however, has the burden of establishing that Tyler knowingly, voluntarily and intentionally waived his Sixth Amendment right to counsel. See Brewer, 430 U.S. at 404 ("[I]t [is] incumbent upon the State to prove an `intentional relinquishment or abandonment of a known right or privilege.' ") (citing Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

Here, the district court appears to have reversed that burden. If the court did, it committed error. "[C]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights."11

2. "Fruit of the Poisonous Tree"

In United States v. Bayer, 331 U.S. 532, 540-41 (1947), the Supreme Court recognized that:

> After an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a case, a later confession may always be looked upon as fruit of the first.

The Court has, however, backed away from formulating an absolute bar to the use of any subsequent statement. In Oregon v. Elstad, 470 U.S. 298 (1985), the Court elaborated upon the circumstances in which the cat may be put back into the bag and a subsequent statement admitted despite a prior violation of Miranda. The court there recognized that the command that all questioning must cease once a defendant asserts his or her right to remain silent under Miranda cannot be interpreted to preclude all subsequent

_____

11. We emphasize, however, that "[i]f an accused `knowingly and intelligently' [communicates with officers without the aid of counsel] we see no reason why the uncounseled statements he then makes must be excluded at his trial." Patterson v. Illinois, 487 U.S. 285, 291 (1988).

12

questioning, nor to bar any subsequent statement regardless of circumstances.

Here, the district court held that the July 20 statement was purged of any prior taint solely because Miranda warnings were given before that statement was taken. D. Ct. Op. at 9. However, the fact that Miranda warnings may have been given is only part of the analysis. It is necessary, though not sufficient, to sustain the government's burden. Accordingly, we cannot simply infer from the district court's language that it found Tyler's purported waiver on July 20 to be knowing, voluntary, and intelligent. The court did not make an inquiry that would be adequate to support such a finding.

> Aside from its reliance upon the presence of the Miranda warnings, no specific aspect of the record or of the circumstances was cited by the court in support of its conclusion. The court, in other words, appears to have held that the Miranda warnings in and of themselves broke the causal chain . . . .

Brown v. Illinois, 422 U.S. 590, 597 (1975). "If Miranda warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the . . . violation, the effect of the exclusionary rule would be substantially diluted." Id. at 601. The same is true of an unconstitutionally obtained statement. 12

_____

12. In Patterson v. Illinois, 487 U.S. 285, 296-97 (1988) the Supreme Court stated:

> As a general matter. . . an accused who is admonished with the warnings prescribed by this Court in Miranda . . . has been sufficiently apprised of the nature of his Sixth Amendment rights, and the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one.

However Patterson did not implicate a violation of the duty to scrupulously honor an assertion of the protections afforded by Miranda. Accordingly, the Court concluded that once it is established that a defendant's decision to not rely on "his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter

In Campaneria v. Reid, 891 F.2d 1014 (2d Cir. 1989), the defendant was approached by police and investigators several times while in the hospital recovering from a serious knife wound. When police inquired as to whether he was finally ready to give a statement, he responded that he was not and told them to come back later. They responded by insisting "if you want to talk to us, now is the time to do it." Id. at 1017. Campaneria's Miranda rights were then read and he gave a recorded statement. That statement, was admitted at his trial along with others that he gave while hospitalized, and he was convicted of manslaughter. Campaneria appealed, arguing in part that the failure to honor his assertion of his right to remain silent and the coercive conditions in which the statements were taken, should have precluded the prosecution from admitting the recorded statement. The Court of Appeals for the Second Circuit disagreed. The court reasoned that "[t]he purpose of this prophylactic rule is to counter the inherently coercive effects of custodial interrogations." Id. at 1021. The court noted that, nevertheless, it is clear that "[q]uestioning can be resumed after fresh Miranda warnings are given and the right to remain silent is otherwise scrupulously honored." Id. The court then noted several factors that must be analyzed to determine whether there is a causal link between the prior illegal statements and a subsequent statement purportedly obtained pursuant to a valid waiver of the right to remain silent and the right to counsel. These factors include, but are not limited to, the passage of time, the subject matter of the subsequent interrogation, and whether the interrogators are "coercive or overbearing." Id. at 1019–21.

In Johnson, we discussed the holding in Oregon v. Elstad, 470 U.S. 298, (1985). We noted that the Court

_____

of law." Id. (internal quotation marks omitted) (citing Moran v. Burbine, 475 U.S. 412, 422–23, 1986).

Here, as we further discuss below, the court's inquiry on remand must go beyond whether the defendant gave a knowing, voluntary and intelligent waiver on July 20. The court must also consider whether obtaining the waiver was consistent with Michigan v. Mosley, 423 U.S. at 104.

14

> [i]n Elstad specifically rejected the proposition that the fruit of the poisonous tree doctrine, which in the fourth amendment context requires the exclusion of evidence or confessions obtained as a result of a constitutional violation, extends to violations of the Miranda decision. Rather, the Court concluded that Miranda requires only that the circumstances surrounding a subsequent confession be evaluated to determine whether the confession was knowing and voluntary. The Court held further that a suspect's subsequent choice to waive his or her rights after a proper administration of Miranda warnings should ordinarily suffice to dissipate the coercive impact of the earlier confession and to demonstrate knowledge and voluntariness.

816 F.2d at 922–3 (internal quotation marks and citations omitted). Here, on remand, the district court mustfirst determine if the conduct of the police in obtaining the July 20 statement was consistent with their duty to scrupulously honor Tyler's prior assertion of his right to remain silent.13 If the court concludes that duty was not breached, it must then consider the totality of circumstances surrounding the July 20 statement and determine if that statement was the result of a knowing, voluntary and intelligent waiver of the protections implicit in the Miranda warnings. Colorado v. Spring, 479 U.S. 564, 572–73 (1987). That inquiry must include, but not necessarily be limited to, factors such as who initiated the July 20 interrogation,14 the time that elapsed between the two interrogations, the extent to which the same police were involved in both interrogations, the manner in which the July 20 interrogation was conducted, and any other factor that is relevant to deciding whether police exploited their prior disregard of Tyler's right to remain silent in

_____

13. Obviously, that statement must be suppressed if the Commonwealth does not meet its burden of demonstrating that police scrupulously honored Tyler's prior assertion of his right to remain silent in taking the
July 20 statement.

14. If police initiated the interrogation, or caused it to be initiated, the
prosecution would be hard-pressed indeed to carry its burden of establishing that interrogation was consistent with scrupulously honoring Tyler's right to remain silent.

15

obtaining the July 20 statement. Thus, the inquiry must include consideration of the extent to which the July 20 statement was the result of the prior misconduct that resulted in the 10:55 pm statement. Although, as we noted in Johnson, a valid waiver will "ordinarily suffice to dissipate" a prior violation of Miranda, the district court's inquiry can not ignore the prior violation in determining if the subsequent waiver was valid. See Alston v. Redman, 34 F.3d 1237, 1253 (3d Cir. 1994) ("In assessing the validity of the waiver, we must determine whether it was voluntary, i.e. free of coercion or deception, and whether it was knowing. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been properly waived.") (citations omitted) (internal quotation marks omitted).

If the court concludes that the July 20 statement was properly admitted, it must then decide if admission of the 10:55 pm statement was harmless error.

> Absent constitutionally impermissible coercion in eliciting an initial confession, the administration of adequate Miranda warnings before a subsequent voluntary confession validates that confession despite the fact that the earlier confession is inadmissible because the Miranda warnings that preceded it were inadequate

Johnson, 816 F.2d at 922. As noted above, the 10:55 statement is very similar to the July 20 statement. The major difference appears to be that in the 10:55 statement Tyler said his brother wanted to kill Proctor, but in the July 20 statement Tyler said that his brother only wanted to scare her. In Johnson we ruled that admission of an oral statement taken without proper Miranda warnings was harmless error because the defendant gave a subsequent written inculpatory statement after Miranda warnings were administered. The similarity of the two statements there lead us to conclude that "the jury . . . learned no more from the improperly admitted confession than it did from the properly admitted one." Johnson, 816 F.2d at 923. (internal quotation marks omitted). A proper analysis may require a

16

similar conclusion here. On the other hand, the difference between the two statements may lead the court to conclude that there is sufficient distinction here to conclude that admission of the 10:55 statement was not harmless.

In ruling that it is possible that admission of the 10:55 statement may constitute harmless error if the July 20 statement was properly admitted we stress two points. First, we do not intend to suggest that we think the district court should or should not conclude that the error was harmless. Second, we do not mean to suggest that the Commonwealth may always cure a failure to scrupulously honor an accused's assertion of his right to remain silent merely by subsequently administering Miranda warnings during a defendant-initiated interview. We merely hold that, under the circumstances here, that prior police misconduct should be considered in determining the validity of the subsequent "waiver."

IV.

For the reasons set forth herein, we will reverse the district court's order of December 23, 1996 that partially denied Tyler's suppression motion, and remand for a hearing to determine the validity of the purported Miranda waiver that resulted in the July 20 statement. If the court concludes that the July 20 statement was properly admitted, it will then decide if admission of the 10:55 statement amounted to harmless error.

17

ALITO, Circuit Judge, concurring.

I join parts I, II, and IIIA of the opinion of the court. I agree that there is sufficient evidence to support Tyler's conviction under 18 U.S.C. S 1512(c)(1)(A)(C) and that the statements that Tyler made on July 9, 1992, should have been suppressed because the interrogating officers did not "scrupulously honor[ ]" Tyler's right under Miranda v. Arizona, 384 U.S. 436 (1966), to cut off questioning. Michigan v. Mosley, 423 U.S. 96, 104 (1975).

I also agree that a remand is necessary with respect to Tyler's July 20 statement, but I write separately to explain my understanding of the questions to be considered by the district court on remand. I find it helpful to discuss separately each of the discrete doctrines that are touched upon in part IIIB of the majority opinion.

I.

At the outset, I think that it is useful to identify exactly which arguments relating to the July 20 statement are before us. In his motion to suppress, Tyler said the following about the July 20 statement:

> 24. On July 20, 1992, eleven days after Mr. Tyler's arrest on murder and related charges, law enforcement officers proceeded to interrogate him at the Adams County Jail without the presence of counsel.
>
> 25. On July 20, 1992, despite the fact that Mr. Tyler had been through the preliminary arraignment and had been sitting in jail for eleven days, law enforcement officers failed to get a written waiver of Mr. Tyler's Miranda rights.
>
> 26. It is submitted herein that Mr. Tyler's statements were coerced and not knowingly, voluntarily, and intelligently made.
>
> 27. These statements were obtained in violation of Mr. Tyler's constitutional rights. U.S. Const. Amend. V and U.S. Const. Amend. VI.
>
> 28. In the alternative, Mr. Tyler would request that This Honorable Court suppress all statements made

18

after the invocation of his right to remain silent on July 9, 1992, as fruits of the poisonous tree.

App. 37-38.

Thus, Tyler seems to have sought suppression of the July 20 statement on four separate grounds: (1) that th e officers failed to obtain a written waiver of his Miranda rights, (2) that Tyler did not knowingly, voluntarily, and intelligently waive his Fifth Amendment rights to remain silent, (3) that he did not knowingly, voluntarily, and intelligently waive his Sixth Amendment rights to counsel, and (4) that the July 20 statement should have bee n suppressed under the "fruit of the poisonous tree" doctrine based on the improper questioning on July 9.

The district court denied Tyler's motion to suppress the July 20 statement and wrote:

> Defendant also seeks to suppress the statement he made to the authorities on July 20, 1992. Essentially, Defendant contends that because the officers failed to obtain a written Miranda waiver, we must suppress the statement. However, Defendant has not cited, and our research has not disclosed, a single case which held that the failure to obtain a written Miranda waiver is grounds for suppression of a defendant's statement where the defendant was verbally informed of his Miranda rights prior to making the statement. Moreover, there is nothing in the record to support an argument that Defendant's waiver was not knowingly made.

Dist. Ct. Op. at 8-9. Accordingly, the court expressly rejected Tyler's first argument (that a written Miranda waiver was needed), as well as his second and third arguments (that he did not knowingly, voluntarily, and intelligently waive his Fifth and Sixth Amendment rights). The court did not expressly address Tyler's fourth argument (i.e., that the July 20 statement should have been suppressed as the fruit of a poisonous tree.)

The section of Tyler's appellate brief dealing with the July 20 statement reads as follows:

19

On July 20, 1992, two of the same troopers who had previously violated Tyler's right to remain silent went to the prison where Tyler had been housed to interrogate him further. Tyler had been in prison for ten days, had been formally charged with criminal homicide and related offenses, and had been arraigned. Tyler's right to an attorney had already attached. In fact, just one day later, on July 21, 1992, an attorney was appointed to represent Tyler. (App. 392).

The right to counsel "attaches at or after the initiation of adversary judicial proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Nelson v. Fulcomer, 911 F.2d 928, 941 (3rd Cir. 1990); see also Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232 (1977); Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877 (1972). Presently, "adversarial judicial proceedings" had begun. Therefore, the Troopers violated Tyler's sixth amendment right to counsel and the statement should have been suppressed.

Moreover, this statement was the product of the initial illegalities that occurred on July 9th and 10th. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407 (1963). As "fruits of the poisonous tree" this statement should be suppressed.

Appellant's Br. at 43-44. Consequently, Tyler's appellate brief abandoned the first and second arguments made in his suppression motion, i.e. that a written Miranda waiver was necessary and that he did not knowingly, intelligently, and voluntarily waive his Fifth Amendment rights to remain silent. Tyler's brief instead relied entirely on the third and fourth arguments made in the district court (i.e. that he did not knowingly, intelligently, and voluntarily waive his Sixth Amendment rights to counsel and that the July 20 statement should have been suppressed under the "fruit of the poisonous tree" doctrine). I will now discuss each of these arguments separately.

II.

A. I turn first to Tyler's contention that he did not knowingly, voluntarily, and intelligently waive his Sixth

20

Amendment right to counsel prior to providing the July 20 statement. If Tyler was given Miranda warnings and orally waived his Miranda rights prior to furnishing this statement, then Tyler's argument is governed by Patterson v. Illinois, 487 U.S. 285 (1988). In that case, the defendant, after indictment, waived his Miranda rights and then provided an incriminating statement without counsel present. The defendant argued that he had not made a "knowing and intelligent" waiver of his Sixth Amendment rights (id. at 292), but the Supreme Court disagreed. The Court identified the "key inquiry" as follows: "Was the accused, who waived his Sixth Amendment rights during postindictment questioning, made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forgo the aid of counsel?" Id. at 292–93. The Court noted that "the Miranda warnings given [the defendant] made him aware of his right to have counsel present during the questioning." Id. at 293. The Court further noted that "the Miranda warnings also served to make [the defendant] aware of the consequences of a decision by him to waive his Sixth Amendment rights during postindictment questioning." Id. The Court then concluded that "[a]s a general matter . . . an accused who is admonished with the warnings prescribed by this Court in Miranda . . . has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one." Id. at 296 (emphasis added) (footnote omitted). In a footnote, the Court pointed out that "[t]his does not mean, of course, that all Sixth Amendment challenges to the conduct of postindictment questioning will fail whenever the challenged practice would pass constitutional muster under Miranda." Id. at 296 n.9. The Court then referred to a situation in which "a suspect was not told that his lawyer was trying to reach him during questioning" and a situation in which an undercover police officer initiated a surreptitious conversation with an unindicted suspect. Id.

In light of Patterson, the first question that the district court should address on remand is whether Tyler was given Miranda warnings and waived his Miranda rights. Trooper

21

Fenstermacher and Trooper Graham testified that Tyler was given Miranda warnings and orally waived his rights. See App. 255, 298. No contrary evidence in the record has been called to our attention, and indeed Tyler's briefs do not assert either that Miranda warnings were not administered or that Tyler did not orally waive his Miranda rights. Nevertheless, since the district court questioned the accuracy of other parts of the officers' testimony, I agree that we should remand for the district court to make an explicit finding on this point. If the district court finds on the basis of the record of the suppression hearing that Tyler waived his Miranda rights, the court should then consider whether there are any unusual circumstances present that are comparable to those mentioned by the Supreme Court in footnote 9 of Patterson.

B. If the district court finds, on the other hand, that Tyler did not waive his Miranda rights, then Tyler's Sixth Amendment argument should be analyzed under Brewer v. Williams, 430 U.S. 387 (1977), and related cases. Under these precedents, the test is whether all of the relevant circumstances show "an intentional relinquishment or abandonment of a known right or privilege.' " Id. at 404 (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938).

III.

The other argument that is properly before us is whether the July 20 statement must be suppressed under the "fruit of the poisonous tree" doctrine, which developed in Fourth Amendment cases. See e.g., Wong Sun v. United States, 371 U.S. 471, 484–88 (1963) (suppressing statements and tangible evidence resulting from an unconstitutional arrest). The Supreme Court addressed this question in Oregon v. Elstad, 470 U.S. 298 (1985). In that case, the defendant was arrested and made an incriminating statement without having been given Miranda warnings. He was later given such warnings, waived his Miranda rights, and executed a written confession. Relying on the "fruit of the poisonous tree" doctrine, the state appellate court held that the written confession had to be suppressed. The state court reasoned that, even though the written confession did not result from "actual compulsion," "the coercive impact of the

22

unconstitutionally obtained statement remains, because in a defendant's mind it has sealed his fate." Oregon v. Elstad, 658 P.2d 552, 554 (1983). The state court wrote that, because of the brief period separating the two incidents, "[t]he cat was sufficiently out of the bag to exert a coercive impact on [the] defendant's later admissions." Id. at 555.

The United States Supreme Court reversed, holding that the "fruit of the poisonous tree" doctrine does not apply when the "poisonous tree" consists of a violation of the prophylactic Miranda rule. The Court noted that if an initial confession is actually coerced, in violation of the Fifth Amendment itself, "the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on whether that coercion has carried over into the second confession." 470 U.S. at 310. But when an initial confession must be suppressed simply because it is obtained in violation of Miranda, "[a] subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." Id. at 314.

Our court applied the teaching of Elstad in United States v. Johnson, 816 F.2d 918, 922–23 (3d Cir. 1987). We wrote: "Absent constitutionally impermissible coercion in eliciting an initial confession, the administration of adequate Miranda warnings before a subsequent voluntary confession validates that confession despite the fact that the earlier confession is inadmissible because the Miranda warnings that preceded it were inadequate." Id. at 922. On that basis, we affirmed the conviction of the defendant, who had provided an initial oral confession that he claimed was obtained in violation of Miranda, as well as a subsequent written confession furnished after adequate Miranda warnings and a waiver. We held that even if the first, oral confession had to be suppressed under Miranda, the second, written confession was nevertheless admissible, and that any error in admitting the oral statement at trial was harmless. Id. at 922–23.

In view of Elstad and Johnson, it is apparent that the defendant's invocation of the Fourth Amendment "fruit of

23

the poisonous tree" doctrine is inapposite, and I am fearful that confusion may result from the majority's reference to "fruit of the poisonous tree" precedents such as Brown v. Illinois, 422 U.S. 590 (1975). See Maj. Op. at 12–13. The majority quotes Brown's statement to the effect that Miranda warnings by themselves may not be sufficient to "attenuate the taint of an unconstitutional arrest.' " Maj. Op. at 13 (quoting Brown 422 U.S. at 602). And the majority observes that "[t]he same is true of an unconstitutionally obtained statement." Maj. Op. at 13. However, while it is true, as Elstad itself pointed out (see 470 U.S. at 310), that the taint of an unconstitutionally obtained statement may not always be attenuated by Miranda warnings, this rule is inapplicable when the initial illegality consists of a violation of the Miranda prophylactic rule.

It is true that the type of Miranda violation in Elstad (questioning a suspect in custody without first providing Miranda warnings) is somewhat different from the type of Miranda violation that occurred here on July 9 (failing scrupulously to honor Tyler's invocation of his right to remain silent by obtaining a Miranda waiver and questioning him shortly after he initially invoked that right). But I see no basis for concluding that Elstad is not equally applicable in this context. The violation that we have held occurred on July 9 was a type of Miranda violation, not a violation of any of Tyler's constitutional rights. Indeed, Tyler's brief did not seek suppression of the July 9 statement on constitutional grounds. See Appellant's Br. at 37–43.

Applying Elstad and Johnson, the question to be addressed by the district court on remand is whether the July 20 statement was preceded by a valid Miranda waiver. If it was, then the Miranda violation on July 9 provides no ground for suppressing the July 20 statement.

IV.

Although Tyler has not presented this argument in so many words, the majority seems to interpret his submissions as raising an additional argument that it is

24

related to, but conceptually distinct from the argument just discussed. This additional argument is that the July 20 statement must be suppressed under Michigan v. Mosley because, in questioning Tyler on July 20 after he had previously invoked his Miranda rights on July 9, the troopers did not "scrupulously honor[ ]" his Miranda rights. See Maj. Op. at 14-16 & n.11. This argument is conceptually distinct from the Elstad argument addressed above because it is not dependent on the existence of a Miranda violation -- or any other type of violation -- on July 9: even if the police scrupulously follow Miranda in the initial questioning of a suspect, a Michigan v. Mosley violation may ensue if the defendant invokes his right to remain silent and the police seek to question him shortly thereafter. See Michigan v. Mosley, 423 U.S. at 102 ("To permit the continuation of custodial interrogation after a momentary cessation would clearly frustrate the purposes of Miranda by allowing repeated rounds of questioning to undermine the will of the person being questioned.").

In addressing this Michigan v. Mosley issue on remand, the first question that the district court should address is whether Tyler or the troopers initiated the July 20 interview. Trooper Fenstermacher testified that it was his recollection that he and Trooper Graham went to the prison and spoke to Tyler because they received word from a prison guard that Tyler wanted to talk with them. App. 298, 321. Tyler contends that Fenstermacher's testimony was "questionable at best" (Appellant's Reply Br. at 12), but no contrary evidence in the record has been called to our attention. Whether Fenstermacher's testimony is to be believed is a question of fact that the district court should resolve on remand based on the record of the suppression hearing and the court's assessment of Fenstermacher's credibility.

If the district court finds that Tyler initiated the July 20 interview, Michigan v. Mosley does not provide a basis for suppressing any statements that Tyler made on that day. On the other hand, if the district court finds that the troopers initiated the July 20 interview, the admissibility of the July 20 statement will turn on an application of the standard set out in Michigan v. Mosley and the subsequent related cases.

25

V.

If the district court concludes that the July 20 statement was admissible, then the district court must decide in the first instance whether the admission of the July 9 statement was harmless error. The two statements are substantively very similar, and while the earlier statement incriminated Tyler's brother David to a somewhat greater degree than did the later statement, see Maj. Op. at 16, Tyler has not yet explained why the earlier statement was any more incriminating to him. Nevertheless, I agree with my colleagues that it is best that we not resolve this question at this time. Until the district court has made the findings necessary to decide whether the July 20 statement is itself admissible, we cannot be sure whether the harmless error issue will ever be reached. In addition, the trial court, which presumably has greater familiarity with the entire record of this case, has yet to make an initial ruling on the harmless error question, and it may be that further briefing and argumentation by counsel on this question at the district court level may provide additional illumination. Accordingly, I agree with my colleagues that we should remand this case to the district court for the findings and other determinations that I have mentioned and, if necessary, for a decision by the district court in the first instance as to whether the erroneous admission of the July 20 statement was harmless.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

26