PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

───────────

No. 18-2923

───────────

UNITED STATES OF AMERICA

v.

TYRONE GREENE,
                              Appellant

───────────

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-15-cr-00015-001)
District Judge: Honorable A. Richard Caputo

───────────

Submitted June 10, 2019
Before: HARDIMAN, PORTER, and COWEN, *Circuit
Judges*

(Filed: June 25, 2019)

Robert O'Hara
Jenny P. Roberts
Office of United States Attorney

235 North Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503
    *Attorneys for Appellee*

Brandon R. Reish
31 North 7th Street
Strousburg, PA 18360

Quin M. Sorenson
Office of Federal Public Defender
100 Chestnut Street
Suite 306
Harrisburg, PA 17101
    *Attorneys for Appellant*

————————

OPINION OF THE COURT

————————

HARDIMAN, *Circuit Judge*.

A jury found Tyrone Greene guilty of possessing a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1), and the District Court sentenced him to sixty months in prison. Greene appeals his judgment of conviction, claiming the District Court erred when it denied two of his motions to suppress. We will affirm.

I

Greene and his girlfriend, Jennifer Manley, were traveling in a white van without its lights on when they were

stopped by Officer Mark Stefanowicz of the Hanover Township Police. Manley was driving, but she was unable to produce a driver's license, vehicle registration, or proof of insurance. Instead, she gave Stefanowicz a New York state benefits card and a rental car agreement in the name of Kevin Hurtudo-Moreno that listed no other authorized drivers. Greene told Stefanowicz that Hurtudo-Moreno was his brother.

While speaking with Manley and Greene, Stefanowicz smelled unburnt marijuana emanating from the vehicle. Greene then began acting suspiciously by "repeatedly seeking to leave, and attempting to leave, the scene of the traffic stop . . . initially standing up and then sitting back down in the passenger seat when ordered out of the vehicle; and standing up and reaching for his waistband, as though trying to conceal something on his person." *United States v. Greene*, 2017 WL 2180354, at \*1 (M.D. Pa. May 18, 2017). Stefanowicz responded to Greene's suspicious behavior by patting him down as permitted by *Terry v. Ohio*, 392 U.S. 1 (1968). In doing so, Stefanowicz felt a bulge, the seal of a plastic baggie, and the texture of its contents. Based on his extensive experience, Stefanowicz immediately recognized the bag as marijuana, so he had no need to manipulate it. After removing the baggie, Stefanowicz placed Greene under arrest.

Incident to Greene's arrest, Stefanowicz searched the van and found .40 caliber bullets in the glove box and in Manley's purse. Stefanowicz then escorted Greene to the police car, but while doing so, he noticed Greene bending over and walking in unusual ways, as if to conceal something. Another officer who had arrived on scene searched Greene further and located a loaded, stolen handgun in his groin area. The police arrested Manley and transported her to the stationhouse apart from Greene.

3

During booking at the stationhouse, Greene asked Stefanowicz whether Manley would get in trouble. Stefanowicz replied that she would, for "headlight violations, no license, marijuana." App. 160. Greene then volunteered that he would "take the hit" for the gun and bullets. *Id.*

As relevant to this appeal, Greene moved to suppress both his inculpatory statement and the gun and bullets seized after he was arrested for possession of marijuana. We address each argument in turn.

II[1]

During the booking process and before receiving any warning under *Miranda v. Arizona*, 384 U.S. 436 (1966), Greene expressed concern for his girlfriend by asking whether Manley would get into trouble. Officer Stefanowicz responded curtly (and accurately) that Manley was facing charges for automobile and drug violations. Although Stefanowicz said nothing about firearm or ammunition charges, Greene volunteered that he would "take the hit" for the gun and bullets. App. 160.

Greene argues that his inculpatory statement should have been suppressed because it was procured in violation of his Fifth Amendment right not to incriminate himself. That argument is premised on *Rhode Island v. Innis*, 446 U.S. 291 (1980), where the Supreme Court held that a suspect must be Mirandized before he is subjected to the functional equivalent of interrogation—*i.e.*, "any words or actions on the part of the

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

4

police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301 (footnotes omitted). Greene cites our decisions in *United States v. Calisto*, 838 F.2d 711, 717 (3d Cir. 1988), and *United States v. Benton*, 996 F.2d 642, 644 (3d Cir. 1993), to argue that his circumstances amounted to the functional equivalent of interrogation. Neither case helps Greene.

In *Calisto*, we found an officer's remark about the possible arrest of the suspect's daughter did *not* create a reasonable expectation that the suspect would make an inculpatory statement. 838 F.2d at 718. In that case, in front of the suspect, one officer informed another that both men's and women's clothing had been found in the bedroom where methamphetamine was found, and the second officer responded, "[w]ell, then we'll have to get an arrest warrant for the daughter." *Id.* at 713. We reasoned that the officers need not have expected the father's inculpatory response because the officer's comment was not directed at the father; it was the kind of remark officers normally make in the course of their duties; and it was not provocative. *Id.* at 713, 718. And because the father did not show any "signs of being emotionally upset or overwrought," officers were not on notice that he would be particularly susceptible to such a remark. *Id.* at 718.

In *Benton*, we held that an officer's remark about seeing the armed robbery suspect dispose of his gun did *not* create a reasonable expectation that the suspect would make an inculpatory response. 996 F.2d at 643. The officer "did nothing more than tell [the suspect] why he was being arrested," and the suspect's response that no one saw him throw the gun away was unforeseeable. *Id.* at 644. Nevertheless, in dicta, we suggested that telling a suspect that other members of his

family would be implicated in the crime, "thus encouraging him to speak to accept sole responsibility," might make the suspect feel "compelled to respond" and render his response excludable. *Id.* Greene mainly relies on this counterexample, and facts distinguishing his case from *Calisto* and *Benton*, to argue that his statement resulted from the functional equivalent of interrogation.

Coercion is the touchstone for identifying circumstances that make an inculpatory statement excludable. *See Innis*, 446 U.S. at 301. Thus, an officer's mere "words or actions" (as opposed to questions) may so coerce a suspect as to render his inculpatory response excludable. *Id.* We rely on the circumstances at the time a suspect made the incriminating statement to determine whether it resulted from the functional equivalent of interrogation. *Benton*, 996 F.2d at 644. And we review de novo "whether the police conduct found to have occurred constitutes custodial interrogation," while reviewing factual findings for clear error. *Calisto*, 838 F.2d at 717.

Here, Officer Stefanowicz's remark did not constitute the functional equivalent of interrogation because Greene's response was unforeseeable. *See id.* at 716. Greene asked for the information he now claims coerced him into confessing. Stefanowicz's answer to Greene's question was a brief and accurate description of what his girlfriend was facing. Moreover, the charges Manley faced were unrelated to the conduct—possessing the gun and bullets—to which Greene confessed. The record does not show Greene was "emotionally upset or overwrought," *id.* at 718, or that other circumstances created such coercive influence that Stefanowicz should have known Greene would likely incriminate himself. Instead, Greene's "statement was simply gratuitous," and the District

6

Court did not err by declining to suppress it. *Benton*, 996 F.2d at 644.

## III

Greene next claims the District Court erred when it denied his motion to suppress the gun and bullets, which he contends were the inadmissible fruits of an illegal pat-down. Under *Minnesota v. Dickerson*, police may seize contraband during a lawful pat-down if the contraband's "contour or mass makes its identity immediately apparent." 508 U.S. 366, 375 (1993). This "plain-feel doctrine" permits an officer to seize an object when, given his training and experience, he develops probable cause to believe it is contraband (1) by the time he concludes it is not a weapon and (2) "in a manner consistent with a routine frisk." *United States v. Yamba*, 506 F.3d 251, 257, 259 (3d Cir. 2007).

Here, Officer Stefanowicz, based on his extensive experience in drug investigations, identified a bag of marijuana in Greene's pocket during a lawful pat-down. He did not manipulate the bulge—and had no need to do so—because he immediately recognized it by its feel and texture. *See id.* at 260. This occurred during a lawful *Terry* pat-down before the officers determined whether Greene was armed. *See United States v. Graves*, 877 F.3d 494, 500 (3d Cir. 2017). For these reasons, the District Court did not err when it denied Greene's motion to suppress the gun and bullets found during a search incident to his arrest for marijuana possession.

\* \* \*

Police lawfully obtained Greene's incriminating statement as well as the gun and bullets that supported his conviction under 18 U.S.C. § 922(g)(1). We will affirm.