

Villanova University School of Law Digital Repository

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-27-2005

# USA v. Latz

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3952

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Latz" (2005). *2005 Decisions.* Paper 46.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/46

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-3952

———

UNITED STATES

v.

CHRISTOPHER W. LATZ,
*Appellant*

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 03-cr-00302)
District Judge: Honorable William W. Caldwell

———

Argued November 15, 2005
Before: ROTH, FUENTES, and BECKER, *Circuit Judges*.

December 27, 2005

ROBERT N. TARMAN (ARGUED)
106 Walnut Street
Harrisburg, PA 17101
*Attorney for Appellant*

THOMAS A. MARINO
United States Attorney
ERIC PFISTERER
Assistant United States Attorney
THEODORE B. SMITH III (ARGUED)
Assistant United States Attorney
United States Attorney's Office

Middle District of Pennsylvania
228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, Pennsylvania 17108
*Attorneys for Appellee*

———

OPINION OF THE COURT

———

BECKER, *Circuit Judge*.

This is an appeal by Defendant Christopher W. Latz from a judgment in a criminal case pursuant to a conditional *nolo contendere* plea reserving his right to challenge the denial of his motion to suppress statements and physical evidence that suggested that he owned a rifle and an explosive device. The statements, which Latz made both before and after he was given *Miranda* warnings, contained admissions that he owned a rifle and an explosive device, which police later seized during a search of Latz's home conducted pursuant to a warrant. This search occurred after an initial warrantless search, which, Latz asserts, was illegal. Latz further contends that the warranted search was tainted both by the initial search and by an unmirandized interrogation.

We conclude that the District Court erred in refusing to

2

suppress Latz's unmirandized statements.  However, because the "fruit of the poisonous tree" doctrine does not extend to physical evidence discovered as a result of voluntary but unmirandized statements, and because the initial search of Latz's home was a valid limited search incident to arrest, we conclude that the District Court properly refused to suppress the physical evidence.  We also find that the District Court correctly declined to suppress mirandized statements that Latz made after his unmirandized statements, because the mirandized statements were tainted neither by the prior unmirandized statements nor by an illegal search.  We thus conclude that the District Court erred only in refusing to suppress Latz's unmirandized statements.  However, because we also conclude that the admission of these statements was not material, we will affirm the judgment of the District Court.

## I. Facts

Latz was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and for possession of an explosive device, in violation of 26 U.S.C. § 5861(d).  He moved to suppress all evidence discovered during a warrantless search of his home, all evidence seized during a

3

subsequent search conducted pursuant to a warrant, and all statements that he made to law enforcement officers in his home, in a police car, and at a booking center.

The District Court held a suppression hearing, which revealed the following sequence of events. On June 17, 2003, Officer Brian Staley of the New Cumberland, Pennsylvania Police Department responded to a complaint that Latz had attempted to remove an air conditioning unit from the window of a home. The complainant mentioned that Latz had guns in his home. At 12:30 a.m. on the following day, Staley visited Latz's home. Latz told Staley that he had been at home at the time in question and that Patricia Roth, who lived with him, could confirm this alibi.

After leaving Latz's home, Staley ran a National Crime Information Center (NCIC) check on Latz, which disclosed (1) the existence of warrants for Latz's arrest, (2) that Latz was in possession of two guns (a .22 millimeter and a .9 millimeter), and (3) that Latz was considered "armed and dangerous." In order to arrest Latz under the warrants disclosed by the NCIC check, Staley returned to the area where Latz's home was located. He was joined by four other officers, including New Cumberland Police

4

Chief Oren Kauffman, who was holding a twelve-gauge shotgun. Staley, Kauffman, and one other officer went to the front door; two other officers went to the back door.

Staley knocked on Latz's front door, and Latz opened it. Staley told Latz that he needed to talk with him, and Latz's eyes shifted toward Kauffman, presumably because Kauffman was holding the shotgun. According to Staley, Latz moved forward, and his arms started to move away from his sides. After Latz moved, Staley seized his left arm, and the officers told him to get down. The officers brought Latz down on his front porch, and Staley handcuffed him.

Kauffman testified that he "stepped in the doorway just to make sure there were no other issues." Roth, who lived with Latz, came down the stairs. Kauffman stated that he "looked to [his] left-hand side to make sure there wasn't somebody around the corner and to make sure that that area was safe," and he saw a homemade knife laying on a television stand just inside the front door. Upon entering, Kauffman also saw a "broken-down" rifle. Kauffman then handcuffed Roth.

Kauffman opened the back door to admit the officers

5

positioned outside. Latz, still handcuffed, was placed on his couch, which Kauffman thought to be a safer location than the porch. Kauffman ordered Staley to conduct a full sweep of the house, and Staley did so.

Kauffman told Latz that he was not obligated to speak, but then questioned him without giving *Miranda* warnings. Kauffman may have been holding his shotgun during the questioning, which he described as follows:

> I basically advised him that he was under arrest, we had warrants from Cambria County, and he was considered armed and dangerous due to those warrants.
>
> I advised him briefly he didn't have to talk with me, but we had some situations we had to get squared away before we move him out of the residence and take him to the West Shore Booking or Cumberland Jail, whichever.
>
> Q. And did he say anything in response to what you just said?
>
> A. I continued on from that point and advised him that obviously there was some concern since he was considered armed and dangerous.
>
> My secondary concern was not only the safety of the officers, but also since Mr. Latz was going to be leaving the residence and if Ms. Roth proved that everything was okay and she was not going to be arrested for anything, that if there was anything left behind in the residence that may implicate her in anything, we need to know about it now so she wasn't left holding the bag, in quotes, for something that he may have in the residence.

6

In response to this questioning, Latz mentioned the rifle and the homemade knife, both of which Kauffman had already seen. Latz also mentioned that there were knives in a backpack in the dining room closet. Kauffman located the backpack and removed its contents, including an explosive device. The officers then evacuated the house, and called both a bomb team and the Bureau of Alcohol, Tobacco, Firearms and Explosives.

Latz was placed in Staley's patrol car. In the patrol car, Latz stated that the explosive device belonged to him, and Staley then gave him *Miranda* warnings. Next, in response to questioning, Latz admitted to Staley that the rifle, the homemade knife, the explosive device, and a marijuana pipe spotted in his home belonged to him. Kauffman was not present during this round of questioning. Less than fifteen minutes separated Latz's unmirandized statements to Kauffman from the mirandized statements he made in Staley's patrol car.

Latz was taken to a booking center, again given *Miranda* warnings, and questioned about the explosive device by Kauffman and other individuals, including an officer of the Pennsylvania state bomb squad. It is not clear how much time separated this

7

second round of mirandized questioning from the initial unmirandized questioning, but it must have been at least three hours and twenty minutes.[1]

Notably, no evidence was seized during the June 18 entry into Latz's home. The rifle and the explosive device were seized in a subsequent search, for which police had a warrant. However, the warrant application reflected discoveries made or information obtained during the warrantless search, listing both firearms and explosive devices as objects to be seized. The Affidavit of Probable Cause also stated that Latz had told Kauffman about the rifle and that Kauffman had discovered the explosive device in the backpack.

The District Court denied Latz's motion to suppress the unmirandized statements, both sets of mirandized statements, and the physical evidence. It only explained its rationale for suppressing the physical evidence, stating that the "fruit of the poisonous tree" doctrine does not extend to derivative physical

---

[1]This can be inferred because the second mirandized interrogation occurred at approximately 11 a.m., and the first mirandized interrogation (which transpired after the unmirandized interrogation) occurred at approximately 7:40 a.m.

evidence. Latz then entered a conditional plea of *nolo contendere* to felon in possession of a firearm and was sentenced to 48 months in prison. He filed a timely notice of appeal.

## II. Standard of Review

The government bears the burden of showing that a search is reasonable under the Fourth Amendment. *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005) (citing *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir.1995)). We review the District Court factual findings for clear error; our review of legal conclusions is plenary. *See Id.* at 261 (citations omitted).

## III. Analysis

### A. The Unmirandized Statements

Latz moved to suppress the unmirandized statements that he made to Kauffman while handcuffed and seated on his couch. Under *Miranda v. Arizona*, 384 U.S. 436 (1966), a defendant's statements made in the course of a custodial interrogation are not admissible as evidence unless the defendant receives appropriate warnings, or an exception applies. *See, e.g.*, *United States v. Leese*, 176 F.3d 740, 743 (3d Cir. 1999).

The government contends that Kauffman's questioning of

Latz did not constitute a custodial interrogation under *United States v. Benton*, 996 F.2d 642 (3d Cir. 1993), a case in which a law enforcement officer mentioned to the defendant that he had seen the defendant bend over near the location where a gun had been discovered. In response, the defendant made a statement suggesting that he owned the gun. *Id.* at 643. We rejected the argument that the officer's statement to the defendant constituted an interrogation. *Id.* at 664. Instead, the defendant's "remarks were unforeseeable." *Id.* at 664. In this case, in contrast, it was forseeable that Latz would respond to Kauffman's questioning. Kauffman told Latz that he was not required to talk (suggesting that Kauffman thought he might). But Kauffman was attempting to gain information about firearms in Latz's house. Because we believe that Kauffman's statements constituted an interrogation, and because Latz was clearly in custody, we conclude that the District Court erred in declining to suppress Latz's unmirandized statements.

## B. The Explosive Device

Chief Kauffman learned about the explosive device as a result of his unmirandized interrogation of Latz, who was

handcuffed and sitting on his couch. The District Court declined to suppress the explosive device on the ground that physical evidence discovered through a custodial interrogation need not be suppressed even if the defendant did not receive *Miranda* warnings.

This Court has held that the Fourth Amendment does not require suppression of physical evidence discovered as a result of unmirandized but voluntary statements. *See United States v. DeSumma*, 272 F.3d 176, 180-81 (3d Cir. 2001). The Supreme Court recently reached the same holding in *United States v. Patane*, 542 U.S. 630 (2004). This holding results from combining the plurality opinion of Justice Thomas with the slightly more narrow concurrence in the judgment of Justice Kennedy, joined by Justice O'Connor. *See Patane* at 641 (plurality opinion) ("[P]olice do not violate a suspect's constitutional rights (or the *Miranda* rule) by negligent or even deliberate failures to provide full *Miranda* warnings. Potential violations occur, if at all, only upon the admission of unwarned *statements* into evidence.") (emphasis added); *id.* at 645 (Kennedy, J., concurring in the judgment) ("In light of the important probative value of reliable

11

physical evidence, it is doubtful that exclusion can be justified by a deterrence rationale sensitive to both law enforcement interests and a suspect's rights during an in-custody interrogation."). *Patane* thus validates *DeSumma*.

To distinguish *Patane* and *DeSumma*, Latz argues that his statements were involuntary, as opposed to merely unmirandized. *See DeSumma*, 272 F.3d at 180-81 ("We hold that the fruit of the poisonous tree doctrine does not apply to derivative evidence secured as a result of a *voluntary* statement obtained before Miranda warnings are issued.") (emphasis added). As we have explained, "a statement is involuntary when the suspect's 'will was overborne in such a way as to render his confession the product of coercion.'" *Lam v. Kelchner*, 304 F.3d 256, 264 (3d Cir. 2002) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 288 (1991)). To determine whether Latz's unmirandized statements were involuntary, we consider the totality of the circumstances in which they were made. *Id.* at 264.

The challenged interrogation was far from exemplary, and Latz should have been mirandized. Before he made the unmirandized statements, Latz had been placed on his porch by

three police officers, handcuffed, and then moved to his couch. Kauffman, who did the questioning, may have been holding a shotgun. However, nothing suggests, and Latz does not contend, that Kauffman pointed the shotgun at Latz during the questioning. Furthermore, there is no evidence that Latz was threatened, and Kauffman told Latz that he did not have to talk. Under these circumstances, we cannot find that Latz's will was overborne. Accordingly, we conclude that the District Court did not err in denying Latz's motion to suppress the explosive device.

### C. The Rifle and Homemade Knife

Kauffman learned about Latz's rifle and homemade knife when he entered the house immediately after he and other officers brought Latz down on his front porch. The government argues that this initial entry into the house was a valid search incident to arrest. The Supreme Court has stated that during an arrest in a suspect's home, officers may conduct a limited search incident to arrest: "[A]s a precautionary matter and *without probable cause or reasonable suspicion*, [police officers may] look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Maryland v. Buie*, 494

13

U.S. 325, 334 (1990) (emphasis added). Thus, a limited search of the immediate adjoining area, unlike a broader protective sweep, does not require reasonable suspicion.

Kauffman's initial search was limited: It extended only to the area immediately inside the door, and it occurred while Latz was on the porch, which adjoins the door. This constitutes a limited search incident to arrest, and reasonable suspicion therefore is not required.

Latz relies on this Court's decision in *United States v. Myers*, 308 F.3d 251, 253 (3d Cir. 2002), in which a police officer searched the bag of a defendant who had been arrested in his residence and who was lying on the floor handcuffed during the search. We first held that the police officer did not have probable cause to arrest the defendant. *Id.* at 254. We then issued what appears to be an advisory opinion on whether opening the bag would have been a valid search incident to arrest if, hypothetically, there were probable cause for the arrest. *Id.* at 266; *see also id.* at 284 (Alarcon, J., dissenting) ("In a discussion which *lacks any precedential value* because it is unnecessary to its decision . . . the Majority has opined that the search of the backpack was not

14

incident to Myers's arrest.") (emphasis added).

Even if *Myers*' discussion of searches incident to arrest were not dicta, *Myers* would not control this case. First, *Myers* involved opening a bag, not a visual sweep. Second, in contrast to this case, *Myers* involved a search that was not contemporaneous with the arrest. *Id.* at 274. Most critically, we stated in *Myers*, "[n]othing on this record suggests that [the officer] was concerned that any confederate was lurking about." *Id.* at 274. In this case, by contrast, the police had reason to fear an attack by a third party. They knew that Latz lived with Roth, they knew from the initial complaint regarding the air conditioning unit that Latz had guns in his house, and they knew from the NCIC background check that Latz owned two guns and was considered armed and dangerous. Kauffman testified that he "stepped in the doorway just to make sure there were no other issues," and that he "looked to [his] left-hand side to make sure there wasn't somebody around the corner and to make sure that that area was safe." Under *Buie*, this is a search of "spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Buie*, 494 U.S. at 334. Reasonable suspicion therefore is not required.

15

Latz argues that Kauffman's entry into the home was illegal because Latz was on the porch. But an attack could easily have been launched through the open door. For the foregoing reasons, we conclude that Kauffman's search was not illegal. Accordingly, the subsequent warranted search was not tainted by an illegal prior search, and the District Court did not err in refusing to exclude the rifle and homemade knife.[2]

## D. Mirandized Statements

Latz submits that the District Court erred in refusing to suppress his mirandized statements in the police car and at the booking center because these statements resulted from the initial umirandized interrogation by Kauffman. The Supreme Court recently considered a two-step interrogation process in *Missouri v. Seibert*, 542 U.S. 600 (2004). In step one, officers questioned a suspect without giving *Miranda* warnings and obtained a confession; in step two, they obtained a second confession in a mirandized interrogation. *Id.* at 604. The Court held that

---

[2]We do not address whether Staley's full sweep of Latz's house conducted after Kauffman's initial entry violated the Fourth Amendment. Police officers did not discover any evidence during the full sweep, and thus the full sweep did not provide a basis for the subsequent search warrant.

statements obtained during the second interrogation are inadmissible if "the two step interrogation was used in a calculated way to undermine the *Miranda* warning." *Id.* at 622 (Kennedy, J., concurring in the judgment).

Because only four Justices joined the opinion of the Supreme Court in *Seibert*, and because Justice Kennedy's concurrence in the judgment is more narrow than the plurality opinion, Justice Kennedy's opinion is the holding of the Court. *United States v. Naranjo*, 426 F.3d 221, 231-32 (3d Cir. 2005). Therefore, we inquire whether Kauffman's failure to provide *Miranda* warnings was "a simple failure to administer the warnings rather than an intentional withholding that was part of a larger, nefarious plot." *Reinert v. Larkins*, 379 F.3d 76, 91 (3d Cir. 2004). Kauffman testified that he asked Latz about weapons in the house due to officer safety concerns, and no evidence contradicts this testimony. Thus, *Seibert* does not apply because Kauffman did not deliberately attempt to circumvent *Miranda*.

This does not end our inquiry. Although we see no evidence of a deliberate withholding of *Miranda* warnings under *Seibert*, we must still apply the traditional rule of *Oregon v. Elstad*,

470 U.S. 298 (1985). *See Naranjo*, 426 F.3d at 232 ("[U]nless the agents deliberately withheld warnings, *Elstad* controls [the defendant's] *Miranda* claim."). Under *Elstad*, "[a] subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." 470 U.S. at 314. To determine whether the subsequent *Miranda* warnings are sufficient, we must consider "who initiated the [initial] interrogation, the time that elapsed between the two interrogations, the extent to which the same police were involved in both interrogations, the manner in which the [initial] interrogation was conducted," and any other relevant factors. *United States v. Tyler*, 164 F.3d 150, 158 (3d Cir. 1998) (footnote omitted).

Considering all of these factors, we do not think that *Elstad* requires the suppression of either set of mirandized statements. As discussed above, Kauffman's statements to Latz were sufficiently probing to constitute an interrogation. However, we glean from Kauffman's testimony that he did not question Latz directly, but instead stated his concern about possible weapons in Latz's home.

18

Furthermore, the unmirandized interrogation appears to have been brief. Less than fifteen minutes separated Kauffman's unmirandized interrogation from the first mirandized interrogation (in Staley's police car), but Kauffman was not in Staley's car. Kauffman did participate in the second round of mirandized questioning (at the booking center), but this occurred at least three hours and twenty minutes after the unmirandized interrogation. Thus, we find that both sets of mirandized statements are admissible.

Relying on *Taylor v. Alabama*, 457 U.S. 687 (1982), Latz also argues that District Court erred in refusing to suppress his mirandized statements because "they were inextricably intertwined with the illegal search." Leaving aside the fact that *Taylor* addresses the taint of illegal arrests, as opposed to illegal searches, we see no connection between Latz's mirandized statements and any illegal search. As discussed above, Kauffman's initial entry into Latz's home was not an illegal search. The full protective sweep may (or may not) have been illegal, but none of the items about which Latz were questioned were discovered during the sweep. Thus, the questioning and the sweep were not intertwined,

19

and the District Court did not err in refusing to suppress Latz's mirandized statements.

### E. Application of Federal Rule of Criminal Procedure 11(a)(2)

Finally, given our determination that the District Court erred in refusing to suppress Latz's unmirandized statements but ruled correctly on the balance of the suppression motion, we must determine what becomes of Latz's conditional plea. The plea is governed by Federal Rule of Criminal Procedure 11(a)(2), which provides:

> **Conditional Plea.** With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea.

The Rule makes it clear that when the Court of Appeals reverses the denial of a suppression motion in full, the defendant has the right to withdraw his plea. In such circumstances, the defendant has "prevail[ed] on appeal." However, the Rule does not state whether a defendant can withdraw his plea if he persuades the Court of Appeals that the District Court erred in denying *part* of his motion to suppress. *See United States v.*

20

*Leake*, 95 F.3d 409, 420 (6th Cir. 1996) ("The question not addressed is the effect of a *partially* successful appeal.").

The Ninth Circuit has suggested that a defendant has the right to withdraw his plea when the Court of Appeals reverses any part of the denial of a suppression motion. "If *any* ruling that forms a basis for the conditional plea is found to be erroneous, we are required to permit the defendant to withdraw his plea." *United States v. Mejia*, 69 F.3d 309, 316 n.8 (9th Cir. 1995). *Mejia*, however, involved two suppression motions, both of which were critical to the defendant's case. *See id.* at 311.

In *Leake*, the Sixth Circuit held that the defendant had the right to withdraw his plea because the District Court had erroneously admitted "what appears to be the most damning evidence against him." *Leake*, 95 F.3d at 420. The Court then stated:

> We do not mean to imply that every time a defendant manages to exclude any evidence on appeal following a conditional plea of guilty, he is entitled to withdraw his plea. The inquiry requires an examination of the degree of success and the probability that the excluded evidence would have had a material effect on the defendant's decision to plead guilty.

*Id.* at 420 n.21.

21

We agree with the Sixth Circuit that a defendant "prevails on appeal" only when he persuades the Court of Appeals to exclude a piece of evidence that is material to his case. Here, we have stated that the District Court erred in admitting Latz's unmirandized statements regarding the rifle, the homemade knife, and the knives in the backpack. However, the District Court properly admitted the rifle, the explosive device, and Latz's mirandized admissions that he owned the rifle and the explosive device. These were the very items that he was charged with possessing. Thus, Latz's unmirandized statements were entirely cumulative, and not material. We therefore conclude that Latz has not "prevail[ed] on appeal" under Rule 11(a)(2), and he does not have the right to withdraw his plea.

The judgment of the District Court will therefore be affirmed.