PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2130
_____

UNITED STATES OF AMERICA

v.

JOSEPH VINCENT WHITE,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 12-cr-00411-001)
District Judge: Hon. Stewart Dalzell
_____

Argued January 22, 2014


Before: FUENTES and FISHER, Circuit Judges, and
STARK,[*] District Judge


_____

[*]Honorable Leonard P. Stark, United States District Court for
the District of Delaware, sitting by designation.

(Opinion Filed: April 14, 2014)

_____

Zane David Memeger, Esq.
Robert A. Zauzmer, Esq.
Robert J. Livermore, Esq.
Paul G. Shapiro, Esq. **[ARGUED]**
U.S. Department of Justice
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
          *Counsel for Appellee*

Leigh M. Skipper, Esq.
Brett G. Sweitzer, Esq.
Sarah S. Gannett, Esq.
Keith M. Donoghue, Esq. **[ARGUED]**
Federal Community Defender Office
For the Eastern District of Pennsylvania
Suite 540 West - Curtis Center
601 Walnut Street
Philadelphia, PA 19106
          *Counsel for Appellant*

_____

OPINION OF THE COURT
_____


STARK, District Judge

Joseph Vincent White appeals the denial of his motion to suppress evidence of his unlawful possession of two firearms.  Because we conclude the District Court erred in its legal analysis, we vacate its order and remand for further proceedings.

## I
### A[1]

In the early morning of April 12, 2012, Pennsylvania State Police Troopers James John Hoban, Jr. and Travis Hill were radioed from their dispatch station about a potential domestic disturbance between a father and his daughter.  The dispatch supervisor stated "something to the effect of" someone "under the influence of drugs or alcohol" was "waving a loaded firearm around" and "dragging his daughter from room to room," or may have been "barricaded inside the bathroom."  (A67-68)  The daughter's boyfriend had reported the incident to police, relaying information the daughter was sending him via text message.  The dispatcher further advised the troopers that the father was believed to be the defendant, White, who on a prior occasion had fought with the police and resisted arrest.

Within approximately 15 minutes, Troopers Hoban and Hill arrived at the residence, which was a trailer home with a mud room attached to the front.  The troopers observed two individuals looking out from behind the screen door of the mud room.  With their guns drawn, the troopers ordered both individuals to come outside.  The taller of the two – who turned out to be White – emerged first and walked unsteadily

---

[1]This appeal does not involve any challenge to the District Court's findings of fact.

towards the troopers, leading them to conclude he was intoxicated or under the influence of drugs. When White was at a distance of about 20 feet from the entrance to the home, the troopers instructed him to lay face down on the ground; White complied and was handcuffed. Trooper Hill then escorted White to the police cruiser, which was parked farther away from the residence, conducted a pat down search, and found that White was not in possession of a firearm or any other weapon.

The second of the two individuals, White's adult daughter, Samantha White, came out of the home slightly behind her father. Samantha hesitated to come all the way towards the officers, instead remaining approximately five to ten feet away from the entrance to the residence. Given her size and apparent victim status, Trooper Hoban decided there was no need to handcuff Samantha. When he asked her if anyone was in the home, she responded there was not.

Trooper Hoban decided to check for himself. As he walked into the front door of the mud room, Trooper Hoban saw two guns – a revolver and a shotgun – lying on the floor just inside the threshold, the same area in which the troopers had first seen White and Samantha upon arriving at the residence. Trooper Hoban seized the guns, carried them to the police cruiser, and placed them in the trunk. He then returned to the home and, with Samantha, walked through the rooms, finding no other person but observing several gun cases and a partly burnt marijuana cigarette, none of which he seized.

Additional troopers arrived on the scene. At some point, an officer advised White of his Miranda rights and

4

asked whether he had any other firearms. White stated he was a gun collector, owned many firearms, and had been carrying the guns because he believed there were people trying to kill him. He also said he had shot at some animals on his property earlier that day.[2]

Weeks later, on May 4, 2012, after obtaining a search warrant based in part on the two firearms Trooper Hoban seized from inside the mud room of the home, police executed a search of the residence and seized 91 additional firearms.

B

On August 8, 2012, a grand jury sitting in the Eastern District of Pennsylvania returned an indictment charging White with unlawful possession of a firearm by a person previously convicted of a felony, in violation of 18 U.S.C. § 922(g). The charge was based on White's possession of the revolver and shotgun uncovered during Trooper Hoban's search. White moved to suppress those two firearms plus the additional guns seized during execution of the search warrant, as well as any inculpatory statements he made. Specifically with respect to the revolver and shotgun, White argued that

---

[2]Given its determination that the search was not unlawful, the District Court did not reach the issue of whether White's statements should be suppressed as "fruits of the poisonous tree." See Murray v. United States, 487 U.S. 533, 536-37 (1988) (requiring suppression of evidence "acquired as an indirect result of [an] unlawful search, up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint"). Given our disposition, there is no need for us to address this question either.

5

Trooper Hoban's warrantless search of his home was unreasonable and violated his rights under the Fourth Amendment.

After receiving extensive briefing on White's motion, on November 30, 2012 the District Court held an evidentiary hearing at which both Troopers Hoban and Hill testified. Trooper Hoban explained that he entered White's home "to make sure that there was no one inside the residence," "just to see if there were any additional people inside the residence." (A85, A89)  Hoban stated that he merely undertook "a cursory sweep of the residence," "for everyone's safety because of a report of a firearm and, also, for myself to determine that there was no one in need of medical attention inside the residence."  (A84)  According to his testimony, he searched for people, not evidence, looking only for "an injured person or a person that could be a threat to myself;" he did not open drawers or look at papers. (A84-85)  Trooper Hill, who was standing by the police cruiser talking with White while Trooper Hoban and Samantha walked through the home, corroborated that Hoban searched only "to make sure there was no one else inside injured or who was a threat to us."  (A123)

White did not call any witnesses.  Neither party sought to argue the motion nor to file post-hearing submissions.  The District Court ruled from the bench and denied White's motion.

Relying on the Supreme Court's decision in Maryland v. Buie, 494 U.S. 325 (1990), and our non-precedential decision in United States v. Latz, 162 F. App'x 113 (3d Cir. Dec. 27, 2005), the District Court held that Trooper Hoban's

6

search was a lawful "search incident to the arrest," which did not require reasonable suspicion in order to be lawful. (A142-43) Finding Troopers Hoban and Hill "to be most credible" and "straight shooters, in all respect[s]" (A140; see also A141-42 ("I credit the testimony of Trooper Hoban and Trooper Hill . . . .")), the District Court found that they encountered a situation "fraught with danger" (A141). In turn, the District Court concluded that the dispatch report combined with what Hoban and Hill observed on the scene gave rise to "a profound objectively-reasonable concern about their safety." (A142) Further, the "very limited search incident to the arrest" was undertaken "with great fidelity to [the officers'] Fourth Amendment duties," and "that's as far as we need to go here under the jurisprudence." (A143-44)

C

On January 7, 2013, White pled guilty to the felon in possession of a firearm charge, expressly reserving his right to appeal the denial of his suppression motion. On April 5, 2013, the District Court sentenced White to 96 months of imprisonment. He then timely filed this appeal, solely challenging the District Court's denial of his motion to suppress.

II

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. See generally United States v. Robertson, 305 F.3d 164, 165 (3d Cir. 2002) (reviewing District Court's denial of suppression motion following conditional guilty plea).

7

We "review the District Court's denial of a motion to suppress for clear error as to the underlying factual determinations but exercise plenary review over the District Court's application of law to those facts." United States v. Stabile, 633 F.3d 219, 230 (3d Cir. 2011). White's appeal presents solely a question of law: whether it was correct to apply the analysis of Buie's "prong 1" to the undisputed facts relating to the search of White's home.

### III

#### A

The District Court held that the warrantless search of White's home was permitted under the first prong of the Supreme Court's opinion in Buie, 494 U.S. at 334. We disagree. White's arrest did not occur inside the home, but instead took place approximately 20 feet outside of it. As we stated in Sharrar v. Felsing, 128 F.3d 810, 824 (3d Cir. 1997), "a sweep incident to an arrest occurring just outside the home must be analyzed under the second prong of the Buie analysis." Accordingly, for reasons we further explain below, we will vacate the District Court's order.

#### B

"The Fourth Amendment provides in relevant part that the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" Florida v. Jardines, 133 S. Ct. 1409, 1414 (2013) (quoting U.S. Const., amend. IV). "It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is

directed.'"  Welsh v. Wisconsin, 466 U.S. 740, 748 (1984) (quoting United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div., 407 U.S. 297, 313 (1972)); see also Jardines, 133 S. Ct. at 1414 ("[W]hen it comes to the Fourth Amendment, the home is first among equals.").  Hence, the Fourth Amendment draws "a firm line at the entrance to the house," Payton v. New York, 445 U.S. 573, 590 (1980), which "must be not only firm but also bright," Kyllo v. United States, 533 U.S. 27, 40 (2001).

A search of a house without a warrant issued on probable cause is generally unreasonable.  See Buie, 494 U.S. at 331.  However, there are several exceptions to the warrant requirement.  In Buie, the Supreme Court articulated two such exceptions:

> We . . . hold that as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

9

Id. at 334. Hence, Buie "prong 1" permits a warrantless search of a home "incident to an arrest" occurring in the home, provided that the search is limited to those places "immediately adjoining the place of arrest from which an attack could be immediately launched." Buie's "prong 2" authorizes a warrantless search of a home based on reasonable and articulable suspicion that the areas being searched may "harbor[] an individual" who poses a danger to those present at the scene of the arrest. "[R]easonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (internal quotation marks omitted).

A warrantless search of a home is also permitted "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." Kentucky v. King, 131 S. Ct. 1849, 1856 (2011) (internal quotation marks and alterations omitted); see also United States v. Coles, 437 F.3d 361, 366 n.8 (3d Cir. 2006). The government argued in the District Court, and reiterates on appeal, that Trooper Hoban's search was justified under Buie and further by the presence of "exigent circumstances."

The District Court limited its analysis to Buie prong 1, denying White's suppression motion based on its conclusion that Trooper Hoban's warrantless search of White's home was a limited and permissible search "incident to arrest," not requiring probable cause or reasonable suspicion. We hold that Buie's prong 1 exception is not available where the arrest took place "just outside the home," just as we stated in

10

Sharrar, 128 F.3d at 824. Here, it is undisputed that White was arrested approximately 20 feet outside of the entrance to his home.[3] Hence, <u>Buie</u> prong 1 is not available and the search must be evaluated pursuant to the other exceptions to the warrant requirement.

C

In <u>Buie</u>, the Supreme Court "decide[d] what level of justification is required by the Fourth and Fourteenth Amendments before police officers, while effecting the arrest of a suspect *in his home* pursuant to an arrest warrant, may conduct a warrantless protective sweep of all or part of the premises." 494 U.S. at 327 (emphasis added). As we observed in <u>Sharrar</u>, "[t]he Supreme Court has never had the opportunity to apply its holding in <u>Maryland v. Buie</u> to protective sweeps incident to arrests made *just outside the home*." 128 F.3d at 828 (emphasis added). We were presented with this precise task in <u>Sharrar</u>. After noting that "those circuits that have addressed the issue have uniformly held that . . . protective sweeps of the home in such situations are not *per se* unreasonable," <u>id.</u> at 823, we found that our sister circuits all agreed that "a sweep incident to an arrest occurring just outside the home must be analyzed under the second prong of the <u>Buie</u> analysis," <u>id.</u> at 824.

We then held:

> Like our sister circuits, we see no reason to impose a bright line rule limiting protective sweeps to in-home arrests, as we

_____

[3]No evidence was presented to contradict Trooper Hoban's testimony that White was "approximately 20 feet" from the home's entrance when he was arrested. (A81, 98, 100)

11

> agree . . . that "in some circumstances, an arrest taking place just outside a home may pose an equally serious threat to the arresting officers." [citing and quoting United States v. Colbert, 76 F.3d 773, 776 (6th Cir. 1996)] Certainly, it would be imprudent to prohibit officers who are effecting an arrest or waiting until a warrant may be obtained from ensuring their safety and minimizing the risk of gunfire or other attack coming from inside the home if they have reason to believe that dangerous individuals are inside. Therefore, ***in order to determine whether the protective sweep in question met the standard enunciated by the Supreme Court in Buie, we must consider whether there was an articulable basis for a protective sweep, i.e., a warrantless search, under the circumstances at that time.***

Id. (emphasis added). Our allusion to "an articulable basis for a protective sweep" was a direct reference to Buie's second prong; no "articulable basis" is required for a search of an "immediately adjoining" space authorized by Buie prong 1. We adhere to our holding in Sharrar.

12

D


In the District Court, the parties did not frame the issue as being whether <u>Buie</u>'s first or second prong is applicable in light of <u>Sharrar</u>. Understandably, then, the District Court provided no analysis on this point.[4] Even had the District Court offered a persuasive rationale for us to reevaluate <u>Sharrar</u>'s holding, only the Court sitting en banc would have authority to do so. See <u>Pardini v. Allegheny Intermediate Unit</u>, 524 F.3d 419, 426 (3d Cir. 2008); <u>see also</u> Third Circuit Internal Operating Procedure ("IOP") 9.1 ("[N]o subsequent panel overrules the holding in a precedential opinion of a previous panel. Court en banc consideration is required to do so.").


On appeal, the government suggests several reasons why we should apply <u>Buie</u>'s prong 1 to this case. Even were we not required to do so, we would reject the government's reasoning.


Principally, the government emphasizes the District Court's findings as to the danger of the situation confronted by the officers, and their "profound objectively-reasonable concern about their safety." (A141-42) Accepting these

---

[4]<u>Sharrar</u> was discussed in White's memorandum of law in support of his motion (<u>see</u> A29-31), but was not cited at all by the government in its written response (<u>see</u> A43-57) and was similarly not mentioned by the District Court in its bench ruling (A140-44).

13

findings,[5] and recognizing that law enforcement personnel often face such situations and should not have to take unnecessary risks with their own lives and the lives of others, these realities do not require extending Buie's prong 1 to arrests made outside the home.  When an arrest occurs just outside of the home, the unassailable public policy of protecting law enforcement officers, as well as victims, bystanders, and even assailants, is appropriately balanced with the Fourth Amendment right to be free of unreasonable searches and seizures by application of Buie's prong 2.

The government also argues that Sharrar's assessment that the Courts of Appeals uniformly agree as to the unavailability of Buie's first prong for arrests outside the home is no longer correct (and may also not have been correct when we decided Sharrar).  The government directs us to post-Sharrar opinions from the Fifth, Seventh, and Ninth Circuits, all of which applied Buie's prong 1.  (See Govt. Br. at 21-23)  None of these opinions, of course, is controlling.  They are also distinguishable, as they did not involve a search of a home as an incident to an arrest that clearly took place at a distance outside the home.  See United States v. Lemus, 582 F.3d 958, 960-63 (9th Cir. 2009) (arrest occurred either just after defendant "stepped into the apartment" or when defendant was only "partially outside the living room" in an area "immediately adjoining" the living room, permitting the living room to be searched incident to arrest); Peals v. Terre Haute Police Dep't, 535 F.3d 621, 628 (7th Cir. 2008) (arrest occurred inside garage "immediately adjoining" a room of a home, permitting search of that room); United States v.

---

[5]We are not called on to determine whether the District Court's findings of fact were clearly erroneous.

Charles, 469 F.3d 402, 405-06 (5th Cir. 2006) (arrest took place "just at the entrance" to an open storage unit – not a home – so the storage unit could be searched as an area "immediately adjacent to the site of the arrest").

Finally, the government relies heavily on our non-precedential opinion in United States v. Latz, 162 F. App'x 113 (3d Cir. Dec. 27, 2005), a case the District Court also found to be pertinent. (A142) Latz is not binding precedent. See IOP 5.7. In any event, Latz is also distinguishable, as Latz's arrest unfolded as he moved across the threshold of the home. Unlike Latz, White was not arrested at or across the threshold of the home, nor in an area that was "immediately adjacent" to the front door, but rather 20 feet away from his house.

Accordingly, we repeat what we held in Sharrar: "a sweep incident to an arrest occurring just outside the home must be analyzed under the second prong of the Buie analysis." 128 F.3d at 824.[6]

E

In its brief, the government contended that, were we to conclude that Buie prong 1 does not justify the warrantless search that occurred here, we could affirm the District Court

---

[6]In Curley v. Klem, 499 F.3d 199, 209-10 (3d Cir. 2007), we observed that portions of Sharrar relating to qualified immunity had been abrogated by later precedents. Neither Curley nor any other precedential opinion of this Court has altered Sharrar's authority on the point for which we rely on it here.

15

on the alternative grounds that <u>Buie</u>'s prong 2 or the "exigent circumstances" exception apply. At oral argument, the government conceded that, alternatively, it would be appropriate to remand this case for further proceedings regarding reasonable suspicion and exigent circumstances.

We have concluded that a remand is the preferable approach here. On remand, the District Court will have to decide if the record is adequately developed to allow it to assess the applicability of the other exceptions to the warrant requirement. Even if additional evidentiary proceedings are unnecessary, we will benefit from having the District Court analyze these issues in the first instance.

IV

Accordingly, we will vacate the District Court's order denying White's suppression motion and remand to the District Court for further proceedings consistent with this opinion.