**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1725
_____

UNITED STATES OF AMERICA

v.

CALEB GUERRIER,
                              Appellant
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3:16-cr-00033-001)
District Judge: Honorable Malachy E. Mannion
_____

Submitted Under Third Circuit LAR 34.1(a)
December 6, 2021
_____

Before: SHWARTZ, PORTER, and FISHER, <u>Circuit Judges</u>.

(Filed:  December 7, 2021)

_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Defendant Caleb Guerrier moved to suppress evidence obtained during a protective sweep of his home after his arrest. Because the District Court did not err in concluding that the sweep was permissible under Maryland v. Buie, 494 U.S. 325 (1990), we will affirm.

I

Law enforcement obtained a warrant to arrest Guerrier for violations of Pennsylvania drug laws. Officers formed a perimeter around a Hanover Township residence associated with Guerrier, and then Officers DeSimone and Boyle knocked on the front door. Guerrier answered, and the officers asked to speak with him. Guerrier "then started to back up inside the residence," and the officers "followed him inside" into the "living room." App. 147. They placed him under arrest and searched his person.

While Guerrier remained with Officers DeSimone and Boyle, other officers, including Officer Ference, conducted a brief protective sweep of the residence. Officer Ference testified that the officers performed the sweep to "mak[e] sure there [wa]s no one else in the house that could do any harm to [him]self or any other officers," and limited their search to places where a person could "be concealed or secreted in." App. 163, 168. Officer Ference further testified that he noticed children's clothing and toys and heard dogs barking. Officer DeSimone likewise testified that he observed children's clothing and toys in the residence.

The house has a compact, railroad layout and is "small." App. 175. . The front door opens into a living room, which is followed by a small middle room, which divides

2

the living room from a kitchen at the back, where the stairs are located.  The stairs are visible from the living room.  Guerrier's bedroom is situated above the living room on the second floor along with a small children's bedroom and a bathroom.

The sweep of the entire home lasted approximately two minutes.  In conducting the sweep, Officer Ference observed the back end of a gun that appeared to have an obliterated serial number protruding from a bag in Guerrier's bedroom.  Guerrier acknowledged the gun's presence in the home.

Based on Officer Ference's observation and Guerrier's admission, police obtained a search warrant for the home.  Officers discovered, among other items, five additional firearms, several boxes of ammunition, a body armor vest, drugs, drug paraphernalia, and approximately $5,000.

Guerrier was charged in a superseding indictment with violations of the federal firearms and drug laws, including one count of being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 3), and one count of possession with intent to distribute cocaine base (crack), in violation of 21 U.S.C § 841(a)(1) (Count 5).

Guerrier moved to suppress the evidence obtained from both the protective sweep and the warrant-authorized search on the grounds that the former exceeded the scope of a protective sweep conducted without reasonable suspicion or probable cause and tainted the evidence derived from the latter.

The District Court denied Guerrier's suppression motion.  See United States v. Guerrier, No. 3:16-CR-00033, 2019 WL 1877167 (M.D. Pa. Apr. 26, 2019).  After

hearing testimony and rejecting the Government's argument that the search was justified by the officers' concern for children who may have been home, id. at *4, the District Court concluded that the sweep was constitutional in light of Buie because, given the size and layout of the home, both upstairs bedrooms were immediately adjoining the location in which Guerrier was arrested and were places from which an attack could have been immediately launched, id. at *4–5. Guerrier subsequently entered a conditional guilty plea to Counts 3 and 5 of the superseding indictment, preserving his right to appeal the suppression issue, and was sentenced to time served and three years of supervised release.

Guerrier appeals the denial of his motion to suppress.

## II[1]

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. Subject to certain exceptions, "[a] search of a house without a warrant issued on probable cause is generally unreasonable." United States v. White, 748 F.3d 507, 511 (3d Cir. 2014).

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

"We review the denial of a motion to suppress under a mixed standard: clear error for factual findings and de novo for issues of law." United States v. Jarmon, 14 F.4th 268, 271 (3d Cir. 2021). "Clear error exists 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Hope v. Warden York Cnty. Prison, 972 F.3d 310, 320 (3d Cir. 2020) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).

In Buie, the Supreme Court announced two such exceptions to the Fourth Amendment's warrant requirement for searches conducted incident to an arrest.[2] 494 U.S. at 334. Under Buie "prong 1," an officer may conduct "a warrantless search of a home 'incident to an arrest' occurring in the home," without probable cause or reasonable suspicion, "provided that the search is limited to those places 'immediately adjoining the place of arrest from which an attack could be immediately launched.'" White, 748 F.3d at 511 (quoting Buie, 494 U.S. at 334). If "the search goes beyond the immediately adjoining areas," Buie "prong 2" applies. Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997), abrogated on other grounds by Curley v. Klem, 499 F.3d 199 (3d Cir. 2007). Under "prong 2," an officer may conduct "a warrantless search of a home based on reasonable and articulable suspicion that the areas being searched may 'harbor [ ] an individual' who poses a danger to those present at the scene of the arrest." White, 748 F.3d at 511 (alteration in original) (quoting Buie, 494 U.S. at 334). Under either prong, the sweep must be "narrowly confined to a cursory visual inspection of those places in which a person might be hiding" because the purpose for a protective sweep is to "protect the safety of police officers or others." Buie, 494 U.S at 327. The sweep may last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." Id. at 335–36.

---

[2] Because the sweep was permitted under the first Buie prong, we need not address the Government's argument that the officers' concern for children who may have been present also justified the sweep.

The protective sweep here was consistent with Buie prong 1.  Guerrier does not contest that the search was brief and "narrowly confined to a cursory visual inspection of those places in which a person might be hiding."  Buie, 494 U.S at 327.  In fact, the record shows that the sweep took approximately two minutes, and there is no suggestion that it went beyond a cursory inspection.  The only issue is whether the sweep of the upstairs rooms was permissible.  This requires us to consider whether those areas were "immediately adjoining the place of arrest from which an attack could be immediately launched."  Buie, 494 U.S. at 334.

Given the layout and size of the home, we agree with the District Court that the entire apartment immediately adjoined the living room in which Guerrier was arrested.[3]  "If an apartment is small enough that all of it 'immediately adjoin[s] the place of arrest' and all of it constitutes a space . . . 'from which an attack could be immediately launched,' then the entire apartment is subject to a limited sweep of spaces where a person may be found."  United States v. Thomas, 429 F.3d 282, 287–88 (D.C. Cir. 2005) (citation omitted) (alteration in original) (quoting Buie, 494 U.S. at 334); see also United States v. Lauter, 57 F.3d 212, 216–17 (2d Cir. 1995) (recognizing that the "small size" of an apartment bears on the scope of a protective sweep); cf. Peals v. Terre Haute Police Dep't, 535 F.3d 621, 624–25, 628 (7th Cir. 2008) (holding as constitutional, under Buie prong 1, a protective sweep of defendant's home after he was arrested in his garage).

---

[3] That Guerrier was arrested near the entrance of the residence does not alter our conclusion, as we need not "narrowly define the place of arrest . . . merely in order to avoid permitting the police to sweep the entirety of a small apartment."  United States v. Thomas, 429 F.3d 282, 287 (D.C. Cir. 2005).

It is undisputed that Guerrier's home is small and compact. The front door opens immediately into the living room, which is separated by a small middle room from a kitchen at the back. The stairs in the middle room are visible from the living room. The two second-floor bedrooms are also next to the staircase, with the adult bedroom located above the living room. In light of the layout and size of the home, the bedrooms "immediately adjoined" the location in which Guerrier was arrested. See United States v. Kirk Tang Yuk, 885 F.3d 57, 79 (2d Cir. 2018) (holding that a master bedroom immediately adjoined the hallway in which the defendant was arrested because "anyone who exited the master bedroom into the living room would have been in the same undivided open space as the hallway"); Thomas, 429 F.3d at 287–88, 290–91 (observing that a bedroom approximately fifteen feet down a hallway from the location of defendant's arrest was immediately adjoining his place of arrest where the bedroom was "a straight shot . . . from the spot where [defendant] was arrested" and "could be immediately accessed from the hallway"); United States v. Lay, 182 F.3d 911 (4th Cir. 1999) (per curiam) (unpublished table decision) (concluding that a bedroom "immediately adjoin[ed]" the place of arrest despite it "open[ing] into a hallway rather than directly into" the area of arrest where "someone exiting the bedroom would immediately have [had] full view of the area of arrest").

Furthermore, an individual could immediately launch an attack from the upstairs rooms. The upstairs rooms were next to the staircase, and there was a direct line of sight from the stairs to the living room. An occupant in one of those upstairs rooms could have exited and fired gunshots from the steps. See Thomas, 429 F.3d at 287 ("[S]afety of the

7

officers, not the percentage of the home searched, is the relevant criterion."); cf. id. at 288

("The officers . . . had to depart through the hallway, and they need not have done so

without first taking the precautionary measure of a limited protective sweep to avert a

potential attack from one of the rooms adjoining the hallway.").  Thus, the District

Court's determination that the place of arrest was immediately adjoining the upstairs

bedrooms from which an attack could have been immediately launched was sound.  See

In re Sealed Case 96-3167, 153 F.3d 759, 770 (D.C. Cir. 1998) (affirming denial of a

suppression motion pertaining to a protective sweep where "[t]he district court found that

[a] small bedroom was only a few feet from [a] larger bedroom door and only a few feet

from the top of the stairs, and was a space from which an attack could be immediately

launched" (quotation marks omitted)).[4]

Accordingly, the District Court correctly determined that the sweep was

permissible under Buie prong 1.

---

[4] In a few instances, a sister circuit court has concluded that sweeping the second floor of a residence—at least when the defendant is arrested on the first floor—exceeds the scope of Buie prong 1.  See, e.g., United States v. Archibald, 589 F.3d 289, 298 (6th Cir. 2009); United States v. Stover, 474 F.3d 904, 911 (6th Cir. 2007).  That circuit court, however, appears to take a more restricted view concerning the permissible scope of a protective sweep, and that view does not fully account for the various places from which an attack can be launched.  See Archibald, 589 F.3d at 293, 298 (concluding that both an "adjoining kitchen," separated from the defendant's place of arrest by a "solid bar counter," and a bedroom loft, concealed behind "a privacy wall," did not immediately adjoin the living room in which defendant was arrested).

III

For the foregoing reasons, we will affirm the order denying the motion to suppress.[5]

---

[5] Judge Fisher agrees that the search was proper but would conclude that it was justified under <u>Buie</u> prong 2, and that the possible presence of children at the premises and a need to ensure their safety gave the officer reason to sweep the premises