**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1609
_____

UNITED STATES OF AMERICA

v.

JAVON POPE,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:20-cr-00282-001)
District Judge:  Honorable Marilyn J. Horan
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 9, 2026
_____

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, SCIRICA and RENDELL, <u>Circuit</u> <u>Judges</u>

(Filed: February 17, 2026)

_____

OPINION[*]
_____

---

[*]  This disposition is not an opinion of the full Court and, pursuant to 3d Cir. I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

This appeal arises out of the Federal Bureau of Investigation's ("FBI")
investigation into a drug trafficking organization known as "Hustlas Don't Sleep"
("HDS"), and, more specifically, the arrest of Maurice Miller at 1727 Wesley Street,
Pittsburgh, Pennsylvania (the "Wesley Street Residence"). Following Miller's arrest,
police officers conducted a protective sweep of the Wesley Street Residence, identifying
several firearms in plain view. With the residence secure, officers and agents waited for
a search warrant. While waiting, an agent discovered that Javon Pope had entered the
residence and that some of the previously visible firearms had been moved. Pope was
then detained, and his cell phone was seized and later searched pursuant to a search
warrant. Pope now challenges the propriety of the protective sweep as well as the search
of his cell phone. We see no error and will thus affirm.

I.

We write primarily for the parties and recite only the facts essential to our
decision. When FBI Special Agents (hereinafter, "agents") went to arrest Miller, they
learned he was not at his home; he was instead at the Wesley Street Residence.[1]
Investigators knew that Miller and other unknown HDS associates used the Wesley Street
Residence as a base from which to sell drugs. Investigators had also learned that HDS
members, including Miller, had begun arming themselves to protect against rival gangs.

Upon arriving at the Wesley Street Residence, police officers observed a car

_____

[1] The agents received assistance from the Pittsburgh Bureau of Police to arrest Miller at
the Wesley Street Residence.

2

parked in the driveway.[2]  The officers announced their presence and ordered anyone inside the Wesley Street Residence to exit.  Two individuals exited:  Miller and a woman named Angel Smith.  Miller, who was unarmed, was taken into custody pursuant to a federal arrest warrant.  The decision was made to apply for a search warrant for the Wesley Street Residence.

Police officers entered the home while waiting for the warrant to conduct a protective sweep due to concerns that armed individuals could be inside the premises. The officers ultimately did not find anyone in the Wesley Street Residence, but they observed several firearms in plain view.  Officers exited the Wesley Street Residence, locked all the doors, and monitored the premises while they awaited the search warrant. By that point, agents had joined the police officers at the scene.

During that time, an agent heard a noise from one of the side doors, causing agents to reenter the home and perform another sweep.  The agents found Pope — an individual previously unknown to investigators — on the second floor.  The agents noted that one of the firearms that had been visible during the prior sweep was no longer present.  Agents then detained Pope and seized his cell phone.

Pope explained to law enforcement that he lived at the Wesley Street Residence with Smith, his girlfriend, and presented his key.  He stated that he had entered the house to retrieve his belongings.  Once the warrant was issued, agents searched the home and discovered that various weapons that had been in plain view during the first protective

---

[2] The car was registered to an individual named Kelvin McCormick, and a drug-sniffing dog indicated that drugs were inside the vehicle.

sweep appeared to have been moved or hidden. Pope denied moving any of the firearms.

Agents sought a search warrant for Pope's cell phone. In support of the warrant, the requesting agent averred that Pope had snuck around the residence before agents encountered him and that previously visible firearms had been hidden. The agent believed that Pope was a "close associate" of Miller because Miller had been using the Wesley Street Residence, where Pope was living, as a distribution location for weeks prior to his arrest. Appendix 66. The agent further stated that a search of the Wesley Street Residence revealed $7,300 in cash, more than 400 grams of suspected fentanyl, and multiple scales, in addition to several firearms. A Magistrate Judge authorized the warrant.

The subsequent search of Pope's cell phone revealed, inter alia, photos of Pope posing with guns. Pope was charged in the United States District Court for the Western District of Pennsylvania with attempting to remove property and take other action to prevent seizure in violation of 18 U.S.C. § 2232(a) as well as being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Pope pled not guilty and moved to suppress both the physical evidence found at the Wesley Street Residence as well as the evidence found on his cell phone. The District Court denied both motions.[3] Pope then

---

[3] The District Court initially denied the motions without a hearing. Upon review of the District Court's opinion, the Government "became concerned that the district court had resolved disputed facts against Pope without a hearing." Gov't Br. 12. The Government thus requested that the court hold an evidentiary hearing, which it ultimately did, over Pope's objection. The District Court then vacated its prior order and issued a new one, once again denying the motions to suppress. It is that order that is the subject of this appeal.

4

entered into a conditional plea agreement, preserving his right to appeal the District Court's denial of his suppression motions. Pope has since been sentenced and filed a timely appeal.

II.[4]

Pope challenges the District Court's denial of his motions to suppress the physical evidence seized from the Wesley Street Residence and the evidence obtained from his cell phone. We take each in turn.

A.

Pope first urges that the protective sweep of the Wesley Street Residence conducted after Miller's arrest violated the Fourth Amendment. The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. We have explained that while "[a] search of a house without a warrant issued on probable cause is generally unreasonable," there are certain exceptions to this general rule. United States v. White, 748 F.3d 507, 511 (3d Cir. 2014). The Supreme Court enumerated two such exceptions in Maryland v. Buie, 494 U.S. 325 (1990), one of which is relevant here. When an arrest occurs outside a residence — which is the case here — law enforcement may conduct a warrantless search of that residence if they have "reasonable and articulable suspicion that the areas being searched may 'harbor[] an individual' who

---

[4] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's findings of facts for clear error and its legal determinations de novo. United States v. Garner, 961 F.3d 264, 269 (3d Cir. 2020). When, as here, the District Court denies a motion to suppress, we view the facts in the light most favorable to the Government. Id.

5

poses a danger to those present at the scene of the arrest." White, 748 F.3d at 511 (quoting Buie, 494 U.S. at 334). The Supreme Court has explained that "'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). "The reasonable possibility that an associate of the arrestee[] remains at large to do mischief or cause danger to the officers is the salient . . . concern for which a warrantless protective sweep is justified." Sharrar v. Felsing, 128 F.3d 810, 824 (3d Cir. 1997), abrogated on other grounds, Curley v. Klem, 499 F.3d 199, 209–11 (3d Cir. 2007).

The protective sweep conducted here fits comfortably within this exception. Law enforcement knew that the Wesley Street Residence had been used by HDS members as part of their drug-distribution efforts, that several HDS members had acquired firearms, and that the identities of a number of HDS members remained unknown. Indeed, there was a car parked at the Wesley Street Residence registered to an individual who could have been in the home. This evidence, taken together, supports law enforcement's reasonable belief that other individuals may have been in the Wesley Street Residence and that these individuals may have been dangerous. The District Court thus did not err when denying Pope's motion to suppress the physical evidence found at the Wesley Street Residence.

B.

Pope next contends that the affidavit in support of the warrant to search his cell phone did not set forth sufficient probable cause. We disagree.

6

We employ a deferential standard of review to a magistrate judge's initial determination of probable cause. United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993) (citing Illinois v. Gates, 462 U.S. 213, 236 (1983)). Thus, our duty is "simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Id. (quoting Gates, 462 U.S. at 238). We will "uphold the warrant as long as there is a substantial basis for a fair probability that evidence will be found." Id. While we do not "rubber stamp a magistrate's conclusions," our role is "quite limited" and "doubtful or marginal cases . . . should be largely determined by the preference to be accorded to warrants." Id. (citations omitted).

The affidavit here provided the Magistrate Judge with a substantial basis for concluding that probable cause existed to search Pope's cell phone. In the affidavit, the averring agent stated, inter alia, that the Wesley Street Residence was a known site of drug distribution for HDS members; a search of the property revealed several weapons, scales, cash, and fentanyl; Pope lived at this residence; and Pope entered the Wesley Street Residence while law enforcement had it secured, and he appeared to have moved or hidden firearms. This evidence provides a substantial basis to support a finding of probable cause. The District Court did not err by denying Pope's motion to suppress the evidence found on his cell phone.

## III.

For the foregoing reasons, we will affirm the District Court's order denying Pope's motions to suppress.